UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAISER FOUNDATION HEALTH PLAN INC., | Case No. 21-cv-05497-HSG |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| v. | |
| MERCK & COMPANY INC., et al., | Re: Dkt. No. 60 |
| Defendants. | |

Before the Court is Defendants' motion to dismiss, Dkt. No. 60. The Court finds the matter appropriate for disposition without oral argument and deems it submitted. *See* Civil L.R. 7-1(b). The Court GRANTS IN PART and DENIES IN PART the motion.

## I.   BACKGROUND

Kaiser Foundation Health Plan, Inc. ("Plaintiff"), brought this antitrust action against Merck & Co., Inc., Merck Sharp & Dohme Corp., and MSP Singapore Co. LLC (collectively "Merck"); Schering-Plough Corp., and Schering Corp. (collectively "Schering"); and Glenmark Pharmaceuticals Ltd., and Glenmark Pharmaceuticals Inc., USA (collectively "Glenmark") in San Francisco Superior Court in June 2021. Dkt. No. 1-1. Defendants removed the case to federal court. Dkt. No. 1. In August 2021, the Judicial Panel on Multidistrict Litigation transferred the matter to the Eastern District of Virginia to be consolidated as part of the *In re Zetia* MDL (*In re Zetia (Ezetimibe) Antitrust Litig.*, No. CV 2:18-MD-2836, (E.D. Va.)). *See* Dkt. No. 17.

In December 2023, Plaintiff's case was remanded back to this Court after Plaintiff opted out of participation in the MDL trial. Dkt. No. 18. Plaintiff then filed an amended complaint in March 2024. Dkt. No. 59 ("FAC"). Merck and Schering (collectively "Defendants") now move

United States District Court
Northern District of California

1    to dismiss certain claims alleged in the amended complaint.  Dkt. No. 60 ("Mot.").[1]

2          As relevant to Defendants' motion, the complaint makes the following allegations of

3    anticompetitive conduct related to Merck's drug, Zetia:

4    •   Merck and Schering improperly obtained two patents, the '115 and RE '721 patents, by

5        failing to disclose prior art and inventors to the United States Patent and Trademark

6        Office ("PTO").  FAC ¶¶ 62–66.

7    •   Merck and Schering improperly listed RE '721, an invalid patent, in the Orange Book

8        when seeking approval of Zetia.  *Id.* ¶¶ 67–72.

9    •   Merck and Schering filed a baseless lawsuit in 2007 to enforce the invalid RE '721

10       patent against Glenmark after it sought to launch a generic drug to compete with Zetia.

11       *Id.* ¶¶ 81–96.

12   •   Merck (which acquired Schering in 2009, *id.* ¶ 15) and Glenmark entered into an

13       illegal reverse payment agreement in 2010 in which Glenmark agreed not to launch a

14       generic version of Zetia for several years, while Merck agreed not to launch an

15       authorized generic in competition with Glenmark.  *Id.* ¶¶ 108–116.

16         Plaintiff asserts that this conduct impeded the sale of, and thus competition from, generic

17   Zetia in the United States for five years, which enabled Defendants to sell Zetia to consumers at

18   artificially inflated prices during that period.  FAC ¶ 149.  As a result, Plaintiff alleges it paid

19   higher prices for Zetia than it would have otherwise.  *Id.* ¶ 151.  Further, Plaintiff alleges that

20   Defendants' monopolization with respect to Zetia also caused Plaintiff to pay higher prices for

21   Merck's brand-name drug Vytorin, since it was precluded from purchasing a lower-priced generic

22   version of Zetia combined with another drug, simvastatin, as a "two-pill" replacement for Vytorin.

23   *Id.*  The amended complaint brings the following claims against the Merck Defendants based on

24   this alleged anticompetitive conduct:

25   •   Monopolization in violation of the Cartwright Act and the antitrust laws of D.C.,

26       Hawaii, and Oregon.  FAC ¶¶ 182–206 (Counts I and II).

27   _____

28   [1] On February 20, 2025, Plaintiff voluntarily dismissed with prejudice all claims against Glenmark Pharmaceuticals Limited and Glenmark Pharmaceuticals Inc., USA.  *See* Dkt. No. 69.

- Conspiracy to monopolize in violation of the Cartwright Act and the antitrust laws of D.C., Hawaii, and Oregon. *Id.* ¶¶ 207–31 (Counts III and IV).

- Conspiracy to restrain trade in violation of the Cartwright Act and the antitrust laws of D.C., Hawaii, and Oregon. *Id.* ¶¶ 232–56 (Counts V and VI).

- Unfair and deceptive trade practices in violation of the Cartwright Act and the consumer protection laws of Colorado, D.C., and Virginia. *Id.* ¶¶ 257–75 (Counts VII and VIII).

- Monopolistic scheme in violation of the Cartwright Act and the antitrust laws of D.C., Hawaii, and Oregon. *Id.* ¶¶ 276–83 (Counts IX and X).

- Unjust enrichment under the laws of California, Colorado, D.C., Georgia, Hawaii, Maryland, Oregon, Washington, and Virginia. *Id.* ¶¶ 293–304 (Count XI).

Defendants now move to dismiss some of these claims, on several grounds. First, they allege that the Court lacks personal jurisdiction over Plaintiff's claims under the laws of states other than California. Mot. at 16. Second, they argue that some of Plaintiff's claims and theories must be dismissed based on stipulations the parties made in the MDL. *Id.*[2] Third, they argue that Plaintiff cannot establish antitrust standing or proximate cause to seek reimbursement for any Vytorin damages. *Id.* at 17. Fourth, Defendants allege that Plaintiff's conspiracy to monopolize claims fail because it has not adequately pled a conspiracy between Merck and Schering. *Id.* Fifth, Defendants argue Plaintiff's monopolization and monopolistic scheme claims are inadequately pled to the extent they rely on conduct involving Merck and Schering's alleged patent fraud (i.e. conduct not related to the alleged reverse payment agreement). *Id.* Finally, Defendants move to dismiss certain state law consumer protection and unjust enrichment claims. *Id.* at 18.

## II.    LEGAL STANDARD

### A.    Personal Jurisdiction

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears

---

[2] Plaintiff does not oppose dismissal of these claims. *See* Opp. at 11, n.4. Accordingly, the Court will dismiss the claims at the end of this Order.

the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). At the motion to dismiss stage, "the plaintiff need only make a prima facie showing of jurisdictional facts" that "if true would support jurisdiction over the defendant." *See Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "Although the plaintiff cannot simply rest on the bare allegations of [his] complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quotations omitted). The Court must also resolve any conflicts in the evidence in the plaintiff's favor. *Id.*

Where no federal statute governs personal jurisdiction, the Court applies the law of the state in which it sits—here, California. *See id.* California law allows for the exercise of "jurisdiction on any basis not inconsistent with the Constitution of th[e] state or of the United States." Cal. Civ. Proc. Code § 410.10. Due process accordingly requires that a non-resident defendant have either a "substantial, continuous, and systematic" presence in the forum state or sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotations omitted). A plaintiff may invoke either general or specific personal jurisdiction. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes." *Id.*

### B. Failure to State a Claim

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell*

4

United States District Court
Northern District of California

1    *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff

2    pleads "factual content that allows the court to draw the reasonable inference that the defendant is

3    liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

4         In reviewing the plausibility of a complaint, courts "accept factual allegations in the

5    complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

6    *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless,

7    courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

8    fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

9    2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## III.    DISCUSSION

### A.    While the Court Lacks Personal Jurisdiction Over Plaintiff's Non-California Claims, the Exercise of Pendent Jurisdiction Over These Claims is Reasonable.

#### i.    Plaintiff's Non-California Claims are Not Related to Defendants' Contacts with California.

14        Plaintiff's amended complaint alleges that the Court has specific personal jurisdiction over

15   Defendants.  FAC ¶ 21.  The Ninth Circuit analyzes specific jurisdiction under a three-prong test:

16        "(1) the defendant must either 'purposefully direct his activities' toward the forum or

17        'purposefully avail[ ] himself of the privileges of conducting activities in the forum'; (2)

18        'the claim must be one which arises out of or relates to the defendant's forum-related

19        activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial

20        justice, i.e. it must be reasonable.'"

21   *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068–69 (9th Cir. 2017) (quoting *Dole*

22   *Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

23        The core dispute here concerns the second prong of the test.  Defendants argue that the

24   Court lacks specific personal jurisdiction over Plaintiff's claims under the antitrust, consumer

25   protection, and unjust enrichment laws of any state other than California because those claims do

26   not arise out of or relate to Defendants' contacts with California.  Mot. at 25.  Defendants cite

27   *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.* ("*BMS*"), 582 U.S. 255 (2017), which held that a

28   California state court did not have personal jurisdiction over consumer claims asserted by

1  nonresident plaintiffs in a mass tort action because there was no "adequate link" between

2  California and the claims of the nonresident plaintiffs, who did not allege that they had purchased

3  the defendant's product in California or suffered any injury there. *Id.* at 264–65. Defendants

4  argue that there is no connection between California and Plaintiff's non-California claims, "which

5  turn on Defendants' alleged conduct in other states." Mot. at 25.

6      Plaintiff argues that personal jurisdiction exists because its non-California claims are

7  related to "Defendants' actions directed towards California." Dkt. No. 61 ("Opp.") at 19.

8  Specifically, Plaintiff points to Defendants' "placement of Zetia, Vytorin, and generic Zetia on

9  Kaiser's California-based formularies" in order to "ensure broad distribution of Defendants'

10 products to Kaiser's members nationwide." *Id.* at 16, 18–19. Additionally, Plaintiff argues that its

11 "status as a California resident, who made overpayments from California and was therefore

12 injured in this forum . . . compels a different conclusion" here than in *BMS* and the cases applying

13 it. *Id.* at 18. Plaintiff also counters that it is an "open question" whether *BMS* would foreclose the

14 exercise of personal jurisdiction in the context of "a federal court hearing a single resident

15 plaintiff's multistate claims based upon removal jurisdiction." *Id.* at 18, n.5.

16     The Court finds that *BMS* and the personal jurisdiction principles it crystallized establish

17 that the Court does not have personal jurisdiction over Plaintiff's non-California claims as pled,

18 and Plaintiff's arguments to the contrary are not persuasive. As an initial matter, the amended

19 complaint does not actually allege that Defendants placed their products on Plaintiff's formularies

20 in California, or that they did so as a "necessary step" to selling their product in other states. *See*

21 Opp. at 16 (failing to cite FAC). Similarly, the complaint does not actually allege that Plaintiff

22 "paid for a share of the cost of each [out-of-state] prescription and facilitated that payment in

23 California, regardless of where the prescription was dispensed." *Id.* (citing FAC ¶ 10, which does

24 not contain this allegation). But in evaluating a plaintiff's prima facie showing of personal

25 jurisdiction, a court may only rely on the well-pleaded allegations in the complaint or any

26 submitted affidavits. *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on*

27 *other grounds by Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017) ("The court may

28 consider evidence presented in affidavits to assist it in its determination and may order discovery

on the jurisdictional issues."); *see also Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (court assessing jurisdictional claim "inquires into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction") (internal citation and quotation omitted). Further, only "[u]ncontroverted allegations in the plaintiff's complaint must be taken as true," *id.*, and "[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger,* 374 F.3d at 800.

Read together, none of these principles allow Plaintiff to support its jurisdictional showing with conclusory facts asserted only in its opposition to Defendants' motion to dismiss (and not in the complaint) without any supporting declaration or affidavit. The operative complaint does not allege that Defendants placed their drugs on Plaintiff's California formularies with the express purpose to facilitate distribution in other states, or that Plaintiff paid for the out-of-state prescriptions in California. Plaintiff's opposition also fails to support these assertions with supporting evidence. So the Court may not consider these contentions in its personal jurisdiction analysis.

Further, none of the facts actually pled in the amended complaint, including Plaintiff's status as a California resident, provide a sufficient basis for the Court to assert personal jurisdiction over the out-of-state claims. *BMS* reiterated that "the primary focus of [the] personal jurisdiction inquiry is the defendant's relationship to the forum State," not the plaintiff's, and whether that relationship is sufficiently connected to "the specific claims at issue." *BMS*, 582 U.S. at 265. As such, the relatedness inquiry asks "not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). In other words, the only relevant conduct is Defendants', and it is only relevant if it is sufficiently connected to the forum. And here, the only conduct Plaintiff alleges to be related to the non-California claims is the distribution of Zetia and Vytorin to Plaintiff's non-California members. *See, e.g.*, FAC ¶ 231 (alleging antitrust injury under the laws of California, D.C., Hawaii, and Oregon based on Plaintiff's reimbursement of the cost of "Zetia, generic Zetia, and Vytorin dispensed to Kaiser's members in these States"). But

1    Plaintiff's complaint concedes that conduct occurred outside California.[3]  Because the conduct

2    relevant to Plaintiff's non-California claims "occurred entirely" outside California, "the mere fact

3    that this conduct affected [a plaintiff] with [a] connectio[n] to the forum State [does] not suffice to

4    authorize jurisdiction." *BMS*, 582 U.S. at 265 (internal quotation and citation omitted) (cleaned

5    up).  Accordingly, under *BMS*, the Court finds that it lacks personal jurisdiction over Plaintiff's

6    non-California claims.

7            **ii.    The Exercise of Pendent Jurisdiction Over Plaintiff's Non-California Claims**
                     **is Reasonable.**

8

9            Plaintiff argues that even if there is no personal jurisdiction over the non-California claims,

10   the Court should exercise pendent jurisdiction over those claims because they share a "common

11   nucleus of operative fact" with the California claims as to which Defendants do not contest

12   jurisdiction.  Opp. at 21–22 (citing *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d

13   1174, 1180 (9th Cir. 2004)).  Defendants counter that "an absolute requirement of the doctrine [of

14   pendent jurisdiction] is the existence of a federal claim."  Dkt. No. 63 ("Reply") at 17.  Defendants

15   also argue that "[s]ince BMS, courts routinely decline to exercise pendent personal jurisdiction

16   where, as here, there is no federal claim."  *Id.*

17          The Court disagrees with Defendants' characterization of the pendent jurisdiction doctrine

18   and their interpretation of *BMS*.  In *Action Embroidery*, the Ninth Circuit explained that "[p]endent

19   personal jurisdiction is typically found where one or more federal claims for which there is

20   nationwide personal jurisdiction are combined in the same suit with one or more state or federal

21   claims for which there is not nationwide personal jurisdiction."  *Action Embroidery*, 368 F.3d at

22   1180–81.  However, its description of the pendent jurisdiction doctrine did not include a federal

23   claim requirement.  Instead, the court held that "a court may assert pendent personal jurisdiction

24   over a defendant with respect to a claim for which there is no independent basis of personal

25   jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the

26

27   [3] *See, e.g.*, FAC ¶ 200 (alleging that Defendants' conduct violated "D.C. Code §§ 28-4503, et seq.,
     with respect to purchases of Zetia, Vytorin, and generic Zetia *in the District of Columbia*" and
28   "Hawaii Code §§ 480, et seq., with respect to purchases of Zetia, Vytorin, and generic Zetia *in
     Hawaii*") (emphasis added).

United States District Court
Northern District of California

same suit over which the court does have personal jurisdiction." *See id.* at 1180.

And soon after *Action Embroidery* was decided, the Ninth Circuit applied it to hold that a district court sitting in diversity could exercise pendent jurisdiction over a state law claim because the court had personal jurisdiction over another state law claim brought by the same plaintiff. *See CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1113 (9th Cir. 2004) ("CE's claims for tortious interference with contract and for breach of contract arise from a common nucleus of fact. Thus, the intentional interference claim may serve as the basis for the exercise of pendent personal jurisdiction over the breach of contract claim."). There, the court reasoned that "[a]s we recognized in *Action Embroidery*, '[w]hen a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts.'" *Id.* (quoting *Action Embroidery*, 368 F.3d at 1181). Courts in this district have followed *CE Distribution* to exercise pendent jurisdiction over claims arising from the same common nucleus of fact as claims by the same plaintiff against the same defendant, even when the "anchor" claim is not a federal claim. *See, e.g.*, *JBR, Inc. v. Cafe Don Paco, Inc.*, No. 12-CV-02377 NC, 2014 WL 5034640, at *8 (N.D. Cal. Aug. 25, 2014), *report and recommendation adopted as modified sub nom. JBR, Inc v. Cafe Don Paco, Inc.*, No. 12-CV-02377-JD, 2014 WL 5034292 (N.D. Cal. Sept. 30, 2014) (exercising pendent jurisdiction over tort claim in diversity action based on breach of contract claim); *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F. Supp. 3d 816, 823 (N.D. Cal. 2015) (exercising pendent jurisdiction over patent and copyright claims after finding personal jurisdiction as to state law tort claims).

Here, Defendants do not dispute that the Court has personal jurisdiction over Plaintiff's California claims. Defendants will have to litigate those claims (if they are viable) in this forum. The Court finds that it is therefore reasonable and in the interest of judicial economy, convenience, and fairness to the parties to litigate all claims brought by Plaintiff arising from the same allegations of anticompetitive conduct here. *See Action Embroidery*, 368 F.3d at 1181; *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d at 1113. This will avoid piecemeal litigation between the same parties, as well as the possibility of conflicting results in different forums.

Further, the Court concludes that *BMS*, issued after *Action Embroidery* and *CE Distribution*, does not compel a different result.  Defendants are correct that since *BMS*, courts have declined to exercise pendent *party* jurisdiction over claims brought by out-of-state plaintiffs. *See Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2019 WL 6612221, at *9 (N.D. Cal. Dec. 5, 2019) (noting that "nearly every court considering the issue has concluded pendent party jurisdiction cannot be exercised by a federal court sitting in diversity"); *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 801 (N.D. Cal. 2020) ("This Court finds that *Bristol-Myers* does apply where, as here, nonresident class representatives assert state-law claims against nonresident defendants on behalf of multistate classes as opposed to a nationwide class."); *Rivera v. Invitation Homes, Inc.*, No. 18-CV-03158-JSW, 2020 WL 8910882, at *7 (N.D. Cal. Oct. 29, 2020) ("the Court declines to exercise pendent personal jurisdiction over the claims of the non-resident named plaintiffs").  This accords with the holding of *BMS* that a forum state does not have a sufficient connection to the claims of nonresident plaintiffs who suffered out-of-state injuries resulting from alleged misconduct that also occurred outside the forum.  *See BMS*, 582 U.S. at 265 ("The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims.").

In this case, however, the California claims (as to which personal jurisdiction is not contested) and the out-of-state claims arising out of the same common nucleus of fact are brought by the same plaintiff, a California resident.  As discussed earlier, that fact does not establish personal jurisdiction over the out-of-state claims, because that analysis depends on the connection between the defendant's contacts with the forum and the specific *claims*.  *See BMS*, 582 U.S. at 265.  But it does warrant the exercise of pendent jurisdiction over the out-of-state claims, even absent a federal claim, in the interest of promoting judicial economy and fairness to the parties. Courts in this district and others in the Ninth Circuit have reached similar conclusions since *BMS*. *See Meta Platforms, Inc. v. Voyager Labs Ltd.*, No. 23-CV-00154-AMO, 2024 WL 2412419, at *3 (N.D. Cal. May 23, 2024) (exercising pendent jurisdiction over federal statutory claims based on personal jurisdiction over breach of contract claim); *Sabadash v. Brevent*, No. 2:23-CV-06265-

1    FLA (KSX), 2024 WL 3841615, at *7 (C.D. Cal. July 8, 2024) (exercising pendent jurisdiction as

2    to state law claims based on personal jurisdiction over other state law claims); *Dana Innovations*

3    *v. Trends Elecs. Int'l Inc.*, No. 822CV02155FWSADS, 2023 WL 3335909, at *8 (C.D. Cal. Apr.

4    21, 2023) (same); *Novian & Novian, LLP v. Wireless Xcessories Grp., Inc.*, No. 2:20-CV-11715-

5    CAS-EX, 2021 WL 1577786, at *9 (C.D. Cal. Apr. 19, 2021) (same).

6        Defendants' motion to dismiss Plaintiff's non-California claims for lack of jurisdiction is

7    therefore **DENIED**.

8        **B.    Plaintiff's "Two-Pill" Theory of Vytorin Damages is Adequately Pled.**

9        Defendants next argue that Plaintiff's claims for Vytorin damages fail for two independent

10   reasons.  First, Defendants argue that Plaintiff has failed to plausibly plead antitrust standing under

11   California's Cartwright Act, or proximate cause as required by other state consumer protection

12   laws and unjust enrichment claims.  Mot. 29–33, 35–36.  Specifically, Defendants argue that "the

13   multiple layers of independent decision-making in [Plaintiff]'s causal chain render [Plaintiff's]

14   Vytorin claims indirect and too remote as a matter of law."  *Id.* at 33.  These "speculative links"

15   include the inferences that if generic Zetia had been available earlier, Plaintiff's employees would

16   have encouraged Kaiser members to switch from Vytorin to a cheaper two-pill regimen,

17   physicians would have prescribed the two-pill regimen, and patients would have agreed to switch.

18   *Id.*  According to Defendants, this theory fails because Plaintiff "alleges no facts . . . showing that

19   *any* (much less *all*) of these events would have actually occurred" but for Defendants' alleged

20   anticompetitive conduct.  *Id.* (emphasis in original).

21       Second, Defendants argue that any Vytorin injuries Plaintiff suffered occurred in a market

22   separate from the market in which the alleged antitrust violations occurred, which is fatal to the

23   Cartwright Act claims.  Mot. at 33–35.

24       Plaintiff responds that its claims for Vytorin damages are not too remote to support

25   antitrust standing because Plaintiff has alleged "that at least some of its members would have

26   substituted generic ezetimibe and generic simvastatin for branded Vytorin," which is all that is

27   required at this stage.  Opp. at 26.  Plaintiff posits that any question as to whether all of its

28   members would have switched "goes only to the extent of [Plaintiff's] damages" and is reserved

for a later stage.  *Id.*  In addition, Plaintiff argues that whether or not the markets for Vytorin and Zetia are separate, Plaintiff is only required to plausibly allege "that its Vytorin injuries occurred within the area of the economy where Defendants' conduct had an anticompetitive impact."  *Id.* at 29.  Plaintiff maintains that its allegations meet this standard because the complaint describes how Defendants' unlawful agreement with Glenmark "targeted" Vytorin and alleges a "direct linkage between the two markets."  *Id.* at 29, 31.

### i.    Defendants Have Not Shown that Plaintiff's Vytorin Theory Fails as a Matter of Law.

"Under the Cartwright Act, a proximate cause requirement, frequently referred to as the 'standing to sue' requirement, requires that the party bringing the action must be within the "target area" of the antitrust violation rather than 'incidentally injured thereby.'"  *Song Fi, Inc. v. Google, Inc.*, No. C 14-5080 CW, 2016 WL 1298999, at *5 (N.D. Cal. Apr. 4, 2016) (quoting *Kolling v. Dow Jones & Co.*, 137 Cal. App. 3d 709, 723 (1982)).  Put another way, "[a] plaintiff must show an injury within the area of the economy that is endangered by a breakdown of competitive conditions."  *Kolling*, 137 Cal. App. 3d at 724.  The injury must also be the "direct result of the unlawful conduct," rather than "secondary, consequential, or remote."  *Id.* (internal citation and quotation marks omitted).

Although it is a somewhat close question, the Court finds that the inferences reasonably drawn from Plaintiff's allegations regarding Vytorin are sufficient to plead antitrust standing and proximate cause at this stage.  The amended complaint alleges that "[h]ad generic Zetia become available before generic Vytorin, Kaiser would have investigated the financial implications of mandating its members switch from branded Vytorin to generic ezetimibe and simvastatin and could have utilized mechanisms, such as formulary tier placement, to encourage and/or require members to substitute single-pill branded Vytorin for a two-pill regime of generic Zetia and simvastatin."  FAC ¶ 158.  Further, Plaintiff alleges that by engaging in monopolistic behavior, Defendants "[were] able to prevent and/or delay competition by at least 5 years and continue charging monopoly prices for Zetia and Vytorin without any significant loss of sales," and contends that but for such conduct "[Plaintiff] would have paid dramatically lower prices for some

or all ezetimibe products (and products containing ezetimibe), beginning at least as early as 2011." *See* id. ¶ 199; *see also id.* ¶ 206 ("As a direct and proximate result of [Defendants'] violation of each of the foregoing laws, [Plaintiff] has been harmed by paying artificially inflated, supracompetitive prices for Zetia, generic Zetia, and Vytorin dispensed to [Plaintiff's] members throughout the United States, and [Plaintiff] has suffered damages in an amount to be proven at trial.").

Defendants argue that because Plaintiff's theory involves predicting what third-party physicians and patients would decide to do in a but-for world, those hypothetical decisions "break the necessary causal chain for antitrust standing." Reply at 20. However, the presence of independent actors in the causal chain does not automatically defeat antitrust standing. *See In re Am. Express Anti-Steering Rules Antitrust Litig.* ("*Amex*"), 433 F. Supp. 3d 395, 412 (E.D.N.Y. 2020), *aff'd*, 19 F.4th 127 (2d Cir. 2021) (clarifying that "exogenous factors are, to be sure, insufficient by themselves to defeat antitrust standing"). And here, the Court finds that the alleged causal chain as to Plaintiff's claimed Vytorin damages is not so speculative that it fails at the pleading stage as a matter of law, even though Plaintiff's theory incorporates assumptions about certain independent decisions by third parties. Reading Plaintiff's allegations as a whole and accepting them as true, it is plausible that if generic Zetia had been available earlier (1) Plaintiff would have encouraged doctors to prescribe, and its members to accept, the two-pill alternative to branded Vytorin using generic Zetia, and (2) some doctors and members would have done so. These inferences are reasonable given Plaintiff's allegation that the two-pill alternative using generic Zetia would have cost less to purchase than branded Vytorin, *see* FAC ¶ 156, especially considering a communication between Defendants and Glenmark indicating Defendants' own awareness that the Zetia settlement agreement "[would] impact Vytorin," *see id.* ¶ 94. As such, Plaintiff has sufficiently pled that its alleged Vytorin damages were the "direct result of," and "within an area of the economy that [was] endangered by," Defendants' alleged anticompetitive conduct as to Zetia. *Kolling*, 137 Cal. App. 3d at 724. Whether Plaintiff can actually prove its claim is for a later stage of the case.

Additionally, none of the cases Defendants cite establish that Plaintiff's Vytorin theory is

too remote to establish antitrust standing or proximate cause as a matter of law. For one, almost all of Defendants' authorities are non-binding district court or out-of-circuit cases. Additionally, the Ninth Circuit case Defendants cite, *City of Oakland v. Oakland Raiders*, 20 F.4th 441 (9th Cir. 2021), addressed only Sherman Act claims, and not any Cartwright Act claims. As such, it is "at most instructive, not conclusive" when assessing antitrust standing under California law. *In re California Gasoline Spot Mkt. Antitrust Litig.*, No. 20-CV-03131-JSC, 2022 WL 3215002, at *2 (N.D. Cal. Aug. 9, 2022) (quoting *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1195 (2013)). And *City of Oakland* and the other cited cases do not persuade the Court that Plaintiff's theory fails as a matter of law on the pleadings. Those cases involved very different markets, products, market actors, and theories of causation, limiting their persuasive application to the unique facts of this case. *See, e.g.*, *City of Oakland*, 20 F.4th at 459 (addressing Oakland's theory that the city would have retained the Raiders football team were it not priced out of the market by the NFL's alleged horizonal price-fixing scheme); *Amex*, 433 F. Supp. 3d at 416 (addressing theory that Amex's allegedly anticompetitive agreements with its merchants caused Amex competitors to charge higher fees on non-Amex merchants); *Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291 (S.D. Cal. 2009) (addressing claim by cell phone user that anticompetitive conduct by wireless chip manufacturers caused him to overpay for his phone and cell service). In the absence of controlling authority, or more directly analogous persuasive authority, the Court will not resolve this fact-intensive and context-specific issue at the motion to dismiss stage. The Court thus **DENIES** Defendants' motion to dismiss the theory on this ground.

> ### ii.  The Distinctness of the Zetia and Vytorin Markets Does Not Preclude Plaintiff's Claims for Vytorin Damages.

Defendants separately argue that Plaintiff's Vytorin claims fail because Plaintiff "does not allege injury in the same market in which competition was allegedly restrained." Reply at 23. While Defendants cite *Kolling* for this proposition, that case actually only held that a plaintiff "must show an injury within the area of the economy that is endangered by a breakdown of competitive conditions." *Kolling*, 187 Cal. Rptr. at 797. And here, as discussed above, Plaintiff has plausibly alleged that the market for Vytorin was an area of the economy that was endangered

by Defendants' alleged anticompetitive conduct in the Zetia market given Plaintiff's plausible allegations of the relationship between the two drugs and the direct links between the two markets.

The Court finds that nothing more is required for Plaintiff to state a claim. None of the cases Defendants cite hold that a plaintiff cannot allege antitrust standing as a matter of law under the Cartwright Act based on injuries in a market other than the one in which the anticompetitive conduct allegedly took place. For example, Defendants assert that *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris, Inc.*, 241 F.3d 696 (9th Cir. 2001), holds that antitrust standing requires a plaintiff to "have suffered its injury in the market where competition is being restrained." Reply at 23 (citing *Ass'n of Wash. Pub. Hosp. Dists.*, 241 F.3d at 705). However, that case only addressed federal antitrust claims, not any claim under the Cartwright Act. *See id.* at 701. Because federal antitrust law is not conclusive as to Cartwright Act claims, the Court declines to find that the principle articulated in *Ass'n of Wash. Pub. Hosp. Dists.* applies as a matter of law in cases brought exclusively under the Cartwright Act. *See In re California Gasoline Spot Mkt. Antitrust Litig.*, 2022 WL 3215002, at *3 (declining to find that federal antitrust standing principles govern cases brought exclusively under the Cartwright Act). And the non-controlling cases Defendants cite do not establish their purported per se rule, or cite California cases supporting it.[4] At this stage, in the absence of controlling authority, the Court declines to find that Plaintiff's claims for Vytorin damages fail as a matter of law because the Vytorin and Zetia markets are distinct.

In sum, the Court thus **DENIES** Defendants' motion to dismiss Plaintiff's claims for Vytorin damages under the Cartwright Act and other state laws.

//

---

[4] Defendants contend that *Lorenzo* articulates the "separate requirement of antitrust standing under the Cartwright Act" that Plaintiff's alleged injuries "must not 'occur[] in a different market from the allegedly anticompetitive conduct.'" Reply at 21 (citing *Lorenzo*, 603 F. Supp. 2d at 1302–1303). Similarly, they argue that *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019 (N.D. Cal. 2015) held that a plaintiff suing under the Cartwright Act "must 'suffer[] antitrust injury in the same market as . . . the alleged anticompetitive conduct.'" Mot. at 34 (citing *id.* at 1027–28, 1032). But neither case actually articulates a definitive "same market" requirement for antitrust standing. Instead, the fact that the plaintiffs' injuries occurred in a different market than the alleged antitrust violations was just one factor weighing against standing. *See Lorenzo*, 603 F. Supp. 2d at 1303; *Feitelson*, 80 F. Supp. 3d at 1028.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**C.    Plaintiff Fails to Plausibly Plead Its Conspiracy to Monopolize Claims.**

2

Next, Defendants move to dismiss Plaintiff's conspiracy to monopolize claims based on an

3

alleged conspiracy between Merck and Schering.  Mot. at 36.  Defendants argue that the

4

allegations of conspiracy in the amended complaint are too conclusory because Plaintiff does not

5

allege facts plausibly suggesting an unlawful agreement between the two entities, or that either

6

Merck or Schering had the specific intent to monopolize.  *Id.* at 36–37.[5]

7

California courts "demand a 'high degree of particularity in the pleading of Cartwright Act

8

violations.'"  *Lorenzo*, 603 F. Supp. 2d at 1299 (quoting *G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d

9

256, 265 (1983)).  A Cartwright Act claim "must plead the formation and operation of the

10

conspiracy and the illegal acts done in furtherance of the conspiracy."  *Freeman v. San Diego*

11

*Ass'n of Realtors*, 77 Cal. App. 4th 171, 196 (1999).  Further, "'[i]t is not enough merely to

12

include conclusory allegations that certain actions were the result of a conspiracy; the plaintiff

13

must allege facts that make the conclusion plausible.'"  *GreenCycle Paint, Inc. v. PaintCare, Inc.*,

14

250 F. Supp. 3d 438, 446 (N.D. Cal. 2017) (quoting *Name.Space, Inc. v. Internet Corp. for*

15

*Assigned Names & Numbers,* 795 F.3d 1124, 1129 (9th Cir. 2015)).  Accordingly, "Cartwright Act

16

claims are properly dismissed 'where the complaint makes conclusory allegations of a

17

combination and does not allege with factual particularity that separate entities maintaining

18

separate and independent interests combined for the purpose to restrain trade.'"  *In re Netflix*

19

*Antitrust Litig.*, 506 F.Supp.2d 308, 320 (N.D. Cal. 2007) (quoting *Freeman*, 77 Cal. App. 4th at

20

189).

21

_____

22

[5] On reply, Defendants raise a new argument.  They assert that Plaintiff's opposition "clarifie[s]" that the conspiracy claim alleges that Merck and Schering "conspired to monopolize a relevant market by undertaking to exploit the RE '721 Patent in their capacities as exclusive licensee and assignee of that patent."  Reply at 25.  Defendants contend that this theory fails as a matter of law because Schering, the patent holder, and Merck, the exclusive licensee, are "'legally incapable of entering into an antitrust conspiracy . . . involving the exploitation of a patent in which they both h[o]ld an interest.'"  *Id.* (citing *Levi Case Co. v. ATS Prods., Inc.*, 788 F. Supp. 428, 432 (N.D. Cal. 1992)).  For the same reason, Defendants argue, Plaintiff cannot plausibly allege specific intent.  *Id.* at 26.  The Court declines to address this issue in this Order for two reasons.  First, Defendants only raised this argument on reply.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").  And second, the Court separately finds that Plaintiff has failed to adequately plead the elements of conspiracy under the Cartwright Act, without regard to Merck and Schering's patent holder/licensee relationship.

23

24

25

26

27

28

United States District Court
Northern District of California

Here, Plaintiff's conspiracy to monopolize claim alleges that, "[a]s described throughout [the] [c]omplaint," Merck and Schering "knowingly and willfully engaged in an illegal conspiracy to monopolize the relevant market by engaging in an anticompetitive scheme to keep AB-rated generic equivalents of Zetia from the market."  FAC ¶ 209.  Plaintiff alleges that "[t]he goal, purpose, and effect of this conspiracy was to maintain and extend Merck's monopoly power with respect to Zetia."  *Id.* ¶ 211.  In opposition to Defendants' argument that these allegations are conclusory, Plaintiff argues that the complaint is "rife with factual allegations" showing that "Merck and Schering worked together in pursuit of the common goal of obtaining and maintaining an unlawful monopoly."  Opp. at 32.  Similarly, Plaintiff contends that the allegations of Defendants' purportedly illegal conduct "support a reasonable inference that Defendants specifically intended to unlawfully establish a monopoly in the market for Zetia."  *Id.* at 33 (citing *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co*., 20 F.4th 466, 483 (9th Cir. 2021)).

The Court finds that Plaintiff's allegations are insufficient to take its conspiracy to monopolize claim over the line from possible to plausible, because none of the facts alleged plausibly support the inference that Defendants "worked together" to further Merck's monopoly with respect to Zetia.  Plaintiff first points to its allegations that Merck and Schering "entered into a joint venture in 2000 to develop and market cholesterol-lowering drugs, including Zetia," filed a New Drug Application for Zetia, and agreed that they would share in the costs for, and profits on, Zetia in the United States.  Opp. at 32 (citing FAC ¶¶ 54–56 & n.7).  But given that all of this conduct is lawful as pled, these facts alone cannot plausibly support an inference that Defendants were working together to pursue an unlawful scheme.  And the only other facts Plaintiff relies on are its allegations that Merck and Schering "engaged in extensive improper conduct in obtaining the RE '721 patent" and together pursued sham litigation against Glenmark for infringement of the invalid patent.  *Id.* (citing FAC ¶¶ 63–66, 82 & n.10).  However, as the Court will discuss below, these allegations are themselves insufficient to plausibly state a claim for patent fraud or any of Plaintiff's related monopolization theories, including the sham litigation theory.  *See infra*, Section III.D.ii.  As a result, Plaintiff has failed to plausibly allege that Merck and Schering engaged in any "illegal acts done in furtherance of the conspiracy."  *Freeman*, 77 Cal. App. 4th at 196.  And

without any plausible allegations of illegal conduct by Defendants, Plaintiff has not pled even "circumstantial evidence [of] principally of illegal conduct" through which Plaintiff can support its conclusory assertion that Defendants "knowingly" combined their interests to "extend Merck's monopoly power." *See Optronic Techs.*, 20 F.4th at 483 (internal citation and quotation omitted); *see also Carefusion Corp. v. Medtronic, Inc*., No. 10-CV-01111-LHK, 2010 WL 4509821, at *10 (N.D. Cal. Nov. 1, 2010) ("Courts cannot infer intent to monopolize from ambiguous or vague statements, but may infer the requisite intent from anticompetitive conduct.") (citing *Rutman Wine Co. v. E. & J. Gallo* Winery, 829 F.2d 729, 735 (9th Cir. 1987)).  Plaintiff's conspiracy claim under the Cartwright Act thus fails as a matter of law.  *See Freeman*, 77 Cal. App. 4th at 196.

Accordingly, the Court **GRANTS** Defendants' motion on this ground and **DISMISSES** Plaintiff's conspiracy to monopolize claims with leave to amend.

### D.    Plaintiff's Monopolization Claims Based on *Walker Process* Fraud Allegations Fail.

Defendants argue that Plaintiff's monopolization theories related to alleged patent fraud ("the monopolization theories") fail.  Mot. at 37.  This includes Plaintiff's allegations that Defendants monopolized the relevant market by "(1) deceiving the PTO during patent prosecution; (2) pursuing sham litigation; (3) wrongfully listing patents in the Orange Book; and (4) engaging in an overarching monopolistic scheme."  *Id.*

#### i.    Plaintiff's Cartwright Act Monopolization Claims Necessarily Fail Because Plaintiff Fails to Sufficiently Allege a Conspiracy Between Merck and Schering.

Unlike the Sherman Act, the Cartwright Act "'applies only to a combination involving two or more persons."  *Rosenman v. Facebook Inc.*, No. 21-CV-02108-LHK, 2021 WL 3829549, at *4 (N.D. Cal. Aug. 27, 2021) (quoting *Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*, 198 Cal. App. 4th 1366, 1386 (2011)); Cal. Bus. & Prof. Code § 16720.  Because the Court has found that Plaintiff has failed to adequately plead the existence of a conspiracy between Merck and Schering, Plaintiff cannot state a monopolization claim under the Cartwright Act based on allegedly concerted conduct by Merck and Schering, which includes Plaintiff's PTO fraud and

United States District Court
Northern District of California

18

related theories.  Defendants' motion to dismiss Plaintiff's Cartwright Act monopolization claims based on these theories is therefore **GRANTED**.

> ### ii.     Plaintiff's Non-California Monopolization Claims Are Inadequately Pled.

Because the Court has exercised pendent jurisdiction over Plaintiff's non-California claims, it still must address the viability of Plaintiff's PTO fraud monopolization theories under other states' antitrust statutes.  Defendants argue that those theories also fail because they are inadequately pled.  Mot. at 38.  The Court agrees.

Beginning with Plaintiff's fraud-on-the-PTO theory (known as a *Walker Process* claim), Plaintiff alleges that Defendants engaged in inequitable conduct when procuring the RE '721 patent by failing to disclose to the PTO invalidating prior art and the name of one of the patent's true inventors.[6]  Opp. at 34.  Among other arguments, Defendants assert that these theories fail because Plaintiff's complaint does not name any specific individual associated with the filing or prosecution of the patent who knew of the material information at issue and deliberately withheld it from the PTO.  Mot. at 41.  Plaintiff responds that its allegation "that Merck and Schering's prosecuting attorneys and inventors knew about the [material information] but intentionally withheld that information from the PTO" is sufficient.  Opp. at 37.

The Court finds that Plaintiff's failure to name any specific individual responsible for intentionally withholding material information from the PTO, or who participated in such efforts, is fatal to its PTO fraud theory.  "Allegations of inequitable conduct sound in fraud, and thus a party pleading inequitable conduct must plead the 'circumstances constituting' the inequitable conduct with particularity under Federal Rule of Civil Procedure 9(b)."  *AbCellera Biologics Inc. v. Bruker Cellular Analysis*, No. 20-CV-08624-JST, 2024 WL 37213, at *3 (N.D. Cal. Jan. 2,

---

[6] The amended complaint alleges that Defendants also intentionally withheld material information during the prosecution of the '115 patent.  *See* FAC ¶¶ 62–66.  However, Plaintiff's opposition to the motion to dismiss fails to mention this patent at all, and instead focuses solely on Plaintiff's allegations of fraud related to the '721 patent.  *See* Opp. at 10, 13, 32, 26–39.  As such, the Court finds that Plaintiff has abandoned a claim predicated on a theory of fraud related to the '115 patent.  *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 888 (9th Cir. 2010) (holding that a "plaintiff who makes a claim in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss, has effectively abandoned his claim") (internal quotation, citation, and alterations omitted).

United States District Court
Northern District of California

2024) (quoting *Exergen Corp. v. Wal-Mart Stores*, 575 F.3d 1312, 1328 (Fed. Cir. 2009)).  "[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."  *Exergen*, 575 F.3d at 1328.  "Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a *specific individual* (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO."  *Id.* at 1328–29 (emphasis added).

Here, the amended complaint alleges that "Merck inventors and/or the attorneys who prosecuted the patent application withheld material prior art from the patent examiner and failed to identify the true inventors, and did so with the specific intent to deceive the patent examiner."  FAC ¶ 72.  It does not name any specific individual who allegedly knew about the material prior art or the true inventors and intentionally withheld this information from the PTO.  The Court finds that this allegation is too general to satisfy the "who" requirement of the "who, what, when, where, and how" standard that governs an inequitable conduct claim.  *See Exergen*, 575 F.3d at 1329 (allegation referring generally to "Exergen, its agents and/or attorneys," without naming a specific individual associated with the filing or prosecution of the relevant patent who knew of the material information and knowingly withheld it, was insufficient); *Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-CV-04738-WHO, 2021 WL 4148651, at *5 (N.D. Cal. Sept. 13, 2021) (explaining that Federal Circuit precedent requires "identification of the specific individuals who committed the alleged misconduct, not just formulations like '[patentee], its agents and/or attorneys'"); *BlackBerry Ltd. v. Typo Prods. LLC*, No. 14-CV-00023-WHO, 2014 WL 1867009, at *1 (N.D. Cal. May 8, 2014) (finding that pleading that "lumped together all of the named inventors and the prosecuting attorney and alleged that all, some, or one of them committed inequitable conduct" was not sufficient under *Exergen*).[7]  This deficiency is "fatal under Rule

---

[7] The lone Federal Circuit case Plaintiff cites to support its position, *Hydril Co. LP v. Grant Prideco LP*, 474 F.3d 1344, 1349 (Fed. Cir. 2007), predates *Exergen*.

9(b)."  *See Exergen*, 575 F.3d at 1330; *see also Contour IP Holding, LLC*, 2021 WL 4148651, at

*6, n.4 (holding that because plaintiff's pleading of the "who" was inadequate, "there [was] no

need or way to address [defendant's] other argument" about specific intent).

In addition, the Court finds that Plaintiff's inadequate pleading of inequitable conduct is

fatal to its other monopolization theories, as they all depend on the allegation that Defendants

fraudulently procured the RE '721 patent.  Plaintiff alleges that Defendants aimed to monopolize

the Zetia and Vytorin markets by pursuing sham litigation against Glenmark based on the RE '721

patent and by improperly listing that patent in the Orange Book.  Opp. at 38.  According to

Plaintiff, the litigation was baseless, and the Orange Book listing was improper, because

Defendants knew the RE '721 patent was fraudulently procured and therefore

invalid/unenforceable.  *Id.*  Further, Plaintiff alleges that by engaging in this conduct—the PTO

fraud, the sham litigation, and the misuse of the Orange Book—Defendants pursued a

monopolistic scheme.  *Id.* at 39; FAC ¶¶ 276–83.  Accordingly, as pled, all of Plaintiff's

monopolization theories must fail because Plaintiff has not sufficiently pled that Defendants

committed fraud on the PTO in obtaining the RE '721 patent.  The Court therefore **GRANTS**

Defendants' motion to dismiss Plaintiff's monopolization claims that rely on the theory that

Defendants' engaged in PTO fraud.

Defendants urge the Court to dismiss Plaintiff's PTO fraud and related monopolization

theories with prejudice because Plaintiff "fails to identify any facts" that could cure the defects in

the FAC.  Reply at 30.  However, the well-established standard requires the Court to grant leave

unless the complaint "could not be saved by amendment."  *Eminence Cap., LLC v. Aspeon, Inc.*,

316 F.3d 1048, 1052 (9th Cir. 2003).  Because the Court finds that Plaintiff's monopolization

theories could be cured by amendment, at least in theory, the Court **DISMISSES** the claims with

leave to amend.[8]

---

[8] The Court does note that extensive discovery already has been taken in the MDL, making this
situation different than usually presented on a motion to dismiss.  Given that Plaintiff should have
a very developed and informed sense of the relevant facts at this point, the Court is unlikely to
grant more than this single opportunity to amend the complaint.  This means that Plaintiff must
plead its best case in any amended complaint.

United States District Court
Northern District of California

### E.     State Law Consumer Protection and Unjust Enrichment Claims

Finally, Defendants argue that Plaintiff fails to state consumer protection and unjust enrichment claims under various state laws.  When a state's highest court has not decided a novel question of state law, a federal court's task "is to predict how the state high court would resolve it."  *Hayes v. Cnty. of San Diego*, 658 F.3d 867, 871 (9th Cir. 2011) (quoting *Westlands Water Dist. v. Amoco Chem. Co.*, 953 F.2d 1109, 1111 (9th Cir. 1991)).  The Court is not "free to reject" an on-point ruling by a lower state court "merely because it has not received the sanction of the state's highest court."  *Id.* at 871–72 (quoting *Katz v. Children's Hosp.*, 28 F.3d 1520, 1528–29 (9th Cir. 1994)).  Rather, "[a]n intermediate state appellate court decision is a 'datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'"  *Id.* at 872 (quoting *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982)).

### i.     Defendants Fail to Show That Plaintiff Cannot State a Claim Under the Colorado Consumer Protection Act.

Defendants first argue that Plaintiff fails state a claim under the Colorado Consumer Protection Act (CCPA) because the law only prohibits "deceptive acts or statements aimed at consumers," citing *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC* ("*Sheet Metal*"), 737 F. Supp. 2d 380, 406–408 (E.D. Pa. 2010).  Mot. at 47.  According to Defendants, Plaintiff's complaint cannot meet this requirement as a matter of law because it only alleges deception aimed at other drug manufacturers, the PTO, and the FDA, but not consumers.  *Id.*  Plaintiff counters that "the supposed 'aimed at consumers' requirement espoused in *Sheet Metal* and relied on by Defendants here has been criticized by other courts as lacking support under Colorado law."  Opp. at 40.  Instead, Plaintiff asserts that the CCPA only requires Plaintiff to plausibly allege that Defendants' anticompetitive acts caused its drugs to be dispensed to consumers at higher prices, to Plaintiff's detriment.  *Id.* (citing *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003)).

The Court finds that Defendants have not identified any controlling state law or persuasive lower state court authority establishing their claimed pleading requirement.  The Colorado

United States District Court
Northern District of California

Supreme Court has not directly addressed this question, and Defendants rely entirely on *Sheet Metal*, a federal case from the Eastern District of Pennsylvania. In *Sheet Metal*, the court held that the CCPA only precludes deceptive acts or statements "aimed at consumers." *Sheet Metal*, 737 F. Supp. 2d at 408 (citing *Rhino Linings*, 62 P.3d at 148). On that basis, the court found that the plaintiffs' allegation that defendants had pursued a sham patent lawsuit to artificially maintain a monopoly in a certain drug market was not actionable under the CCPA because such conduct was not "aimed at consumers." *Id.* However, this Court respectfully disagrees with *Sheet Metal*'s interpretation of the CCPA, and instead finds that the relevant Colorado authority does not compel the conclusion that Plaintiff's CCPA claim here is barred as a matter of law.

The Colorado Supreme Court clearly outlined the elements of a CCPA claim in *Rhino Linings*, stating that "[t]o prove a private cause of action under the CCPA, a plaintiff must show:

(1) that the defendant engaged in an unfair or deceptive trade practice;

(2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation;

(3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;

(4) that the plaintiff suffered injury in fact to a legally protected interest; and

(5) that the challenged practice caused the plaintiff's injury."

*Rhino Linings*, 62 P.3d at 146–47 (citing *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)).

None of these elements impose an "aimed at consumers" requirement, and Defendants provide no persuasive basis for the Court to find otherwise. As described in *Rhino Linings*, under the CCPA, "[a] party may establish a deceptive trade practice by proof that a defendant knowingly made a misrepresentation that induces a party's action or inaction," *Rhino Linings*, 62 P.3d at 147, where "party" may include a "nonconsumer" like Plaintiff. *See Hall*, 969 P.2d at 232. In addition, *Rhino Linings* emphasized that the challenged conduct must have a significant impact on the public, but the court never stated that this element also requires the alleged misrepresentation to have been made directly to a consumer to be actionable under the CCPA. *See Rhino Linings*, 62 P.3d at 147 (holding that the factors determining "whether a challenged practice significantly

United States District Court
Northern District of California

impacts the public within the context of a CCPA claim" include "the number of consumers *directly affected by* the challenged practice") (emphasis added); *see also id.* at 149 ("[I]f a wrong is private in nature, and does not affect the public, a claim is not actionable under the CCPA."). Accordingly, the Court finds that Defendants have not shown that a plaintiff must plead that a deceptive practice was "aimed at consumers" under the CCPA as a matter of law.  The Court thus **DENIES** Defendants' motion to dismiss on this ground.

### ii.   Defendants Fail to Show that Plaintiff Does Not Have Standing Under the Virginia Consumer Protection Act.

Next, Defendants similarly argue that Plaintiff cannot state a claim under the Virginia Consumer Protection Act (VCPA) because the law only provides a cause of action to consumers, defined as "'those who have purchased goods for personal, family, or household use.'"  Mot. at 47 (quoting *Microsoft Corp. v. #9 Software, Inc.*, 2005 WL 3447965, at *4 (E.D. Va. Dec. 15, 2005)). Defendants contend that Plaintiff, an "institutional purchaser," is not a consumer within the meaning of the statute.  *Id.*

In opposition, Plaintiff urges the Court to follow the decision of the judge presiding over the MDL, which upheld a magistrate judge's conclusion that end-payors like Plaintiff had standing to sue under the VCPA.  Opp. at 41.  The court found that, based on the plain language of the statute, the VCPA "does not require that [end-payor plaintiffs] themselves purchased Zetia or ezetimibe."  *See In re Zetia (Ezetimibe) Antitrust Litig.*, 400 F. Supp. 3d 418, 439 (E.D. Va. 2019). Given that the MDL court already decided the same VCPA issue that Defendants now raise here, the Court views the MDL decision as the law of the case, unless there is a compelling reason to reconsider it.

As an initial matter, the Court notes that the Virginia Supreme Court has not directly addressed this issue, and as other courts have noted, there appears to be a split among lower courts in the state.  *See MSP Recovery Claims, Series LLC v. Abbott Lab'ys*, No. CV1921607FLWZNQ, 2021 WL 2177548, at *17 (D.N.J. May 28, 2021) ("Virginia courts are split on the issue of whether the VCPA applies more broadly than just between a supplier and the ultimate consumer.") (internal quotations and citation omitted).  Accordingly, some state and federal courts have

rejected the notion that VCPA claims are "reserved for consumers only." *See e.g.*, *id.* (allowing claim by institutional plaintiffs because defendants knew that their products "were ultimately used for personal purposes, irrespective of the business transactions alleged"); *Commonwealth ex rel. Herring v. Teva Pharms. USA, Inc.*, 107 Va. Cir. 44 (2020) (concluding that "the VCPA encompasses more than direct sales to consumers" given that "prohibited practices" under the statute must only be committed "in connection with" a consumer transaction). Other courts have arrived at the opposite conclusion. *See, e.g.*, *MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*, No. 318CV2211BRMLHG, 2020 WL 831578, at *11 (D.N.J. Feb. 20, 2020) (holding that "sales between merchants—or any sales not directly to a consumer—are not within the scope of the VCPA"). *Cf. In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 10-05625 SI, 2013 WL 6327490, at *6 (N.D. Cal. Dec. 3, 2013) (observing that "Virginia has an interest in limiting its citizens' rights to bring consumer protection suits 'to those who have purchased goods for personal, family, or household use.'") (quoting *Microsoft Corp.*, 2005 WL 347965, at *4).

However, in the Court's view, and as the MDL court also found, the argument that the VCPA only provides a cause of action to "consumers" overlooks the plain language of the statute. *See In re Zetia*, 400 F. Supp. 3d at 439. As the Virginia Supreme Court has observed, "[t]he principal source from which to determine the General Assembly's intent in enacting a statute is the language it used in the statute itself." *Ballagh v. Fauber Enterprises, Inc.*, 290 Va. 120, 125 (2015). Here, the VCPA expressly provides a remedy for "[a]ny person who suffers loss as the result of a violation of this chapter," where "person" means "any natural person, corporation, trust, partnership, association and any other legal entity." *See* Va. Code Ann. § 59.1-204, -198. Further, the loss must be the result of "fraudulent acts or practices committed by a supplier *in connection with* a consumer transaction." *Id.* § 59.1-200 (emphasis added). Based on this language, the Court agrees with the conclusion of the MDL court and other state and federal courts that "Virginia only requires that the [end-purchaser plaintiffs] suffered a loss in connection with a consumer transaction," as Plaintiff has alleged here. *See In re Zetia*, 400 F. Supp. 3d at 439.[9]

---

[9] The other cases Defendants rely on addressed the consumer protection laws of other states where, unlike the VCPA, the language of the relevant statute expressly limits standing to

1    Accordingly, the Court declines to dismiss Plaintiff's claim under the VCPA.  Defendants'

2    motion to dismiss on this ground is **DENIED**.

3          iii.    **Plaintiff's Georgia, Washington, Virginia Unjust Enrichment Claims Are**
                   **Barred by *Illinois Brick*.**

4

5    Defendants also argue that Plaintiff lacks standing to bring unjust enrichment claims under

6    the laws of Georgia, Washington, and Virginia because these states follow the Supreme Court's

7    holding in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), that indirect purchasers of a product

8    lack antitrust standing.  Mot. at 48 (citing *Illinois Brick*, 431 U.S. at 740–42).  Defendants assert

9    that because Plaintiff's unjust enrichment claims are premised on the same allegations underlying

10   its antitrust claims, it may not "recast its antitrust claims as claims for unjust enrichment to

11   circumvent these states' prohibition on indirect purchaser suits."  *Id.*  Plaintiff appears to concede

12   that these states have not repealed *Illinois Brick*, instead arguing that "numerous courts" have

13   rejected the rule that *Illinois Brick* precludes state law unjust enrichment claims.  Opp. at 33.

14   Courts in this district, however, do apply the rule that indirect purchasers "may not

15   circumvent the *Illinois Brick* prohibition absent authority from the courts of those states that

16   would allow unjust enrichment claims to proceed."  *See United Food & Com. Workers Loc. 1776*

17   *& Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d

18   1052, 1089 (N.D. Cal. 2014); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. at

19   1192 (same).  Plaintiff provides no such authority under Georgia, Virginia, or Washington law.

20   Accordingly, the Court finds that Plaintiff cannot bring unjust enrichment claims under the laws of

21   these states.  *See In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1175 (N.D. Cal. 2015)

22   (dismissing unjust enrichment claims under the laws of Georgia, Virginia, and Washington

23

24   _____

"consumers."  For example, courts have dismissed claims by third-party payors under Missouri's
25   Merchandising Practices Act (the MMPA) because that law "limits the class of individuals with
standing to pursue a claim to '[a]ny person who purchases or leases merchandise primarily for
26   personal, family or household purposes and thereby suffers an ascertainable loss.'"  *See In re*
*Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2010 WL 3463491, at *12 (N.D. Cal. Sept. 1,
27   2010), *aff'd*, 464 F. App'x 651 (9th Cir. 2011) (quoting Mo. Rev. Stat. § 407.025); *In re Restasis*
*(Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 355 F. Supp. 3d 145, 157 (E.D.N.Y. 2018)
28   ("Numerous courts have interpreted the MMPA to confer standing exclusively on those who
purchase property for their own use.").  But the standing provision of the VCPA is not so limited.

United States District Court
Northern District of California

1  because these states have not passed *Illinois Brick* repealer statutes); *In re Cathode Ray Tube*

2  *(CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 4505701, at *12 (N.D. Cal. Aug. 21, 2013)

3  (applying *Illinois Brick* to dismiss Washington unjust enrichment claim); *In re Hard Disk Drive*

4  *Suspension Assemblies Antitrust Litig.*, No. 19-MD-02918-MMC, 2021 WL 4306018, at *25

5  (N.D. Cal. Sept. 22, 2021) (applying *Illinois Brick* to dismiss Virginia unjust enrichment claim); *In*

6  *re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. at 1192 (declining to recognize Virginia

7  unjust enrichment claim where plaintiffs failed to "cite any authority" from Virginia).  The Court

8  therefore **DISMISSES** Plaintiff's Georgia, Virginia, and Washington unjust enrichment claims

9  without leave to amend, because those claims are not viable as a matter of law.

10        **iv.**    **Plaintiff Fails to State a Hawaii Unjust Enrichment Claim.**

11        Finally, Defendants assert that Plaintiff cannot maintain an unjust enrichment claim under

12  Hawaii law because its claim under the state's antitrust statute provides an adequate remedy at law

13  for its injuries.  Mot. at 48.  Plaintiff responds that at the pleading stage, it is entitled to pursue

14  alternative remedies.  Opp. at 42.

15        Plaintiff is correct that it may plead alternative theories, but "even an alternative equitable

16  claim must plead any 'necessary prerequisite' to such a claim." *Aquilina v. Certain Underwriters*

17  *at Lloyd's Syndicate #2003*, 406 F. Supp. 3d 884, 917 (D. Haw. 2019).  And Hawaii courts have

18  made clear that "[t]he absence of an adequate remedy at law . . . is the 'necessary prerequisite' to

19  maintaining equitable claims" such as an unjust enrichment claim.  *See Soule v. Hilton Worldwide,*

20  *Inc.*, 1 F. Supp. 3d 1084, 1102 (D. Haw. 2014) (quoting *Porter v. Hu*, 169 P.3d 994, 1007 (Haw.

21  Ct. App. 2007).  Here, Plaintiff's unjust enrichment claim merely "incorporates the other facts of

22  the FAC by reference and makes a conclusory allegation" that Defendants' anticompetitive

23  conduct is inequitable.  *See Soule*, 1 F. Supp. 3d at 1103; FAC ¶¶ 293–304.  In addition, while the

24  complaint states that it would be futile for Plaintiff to seek damages against any party with whom

25  it has privity of contract, *see* FAC ¶¶ 297–98, Plaintiff fails to explain how the damages it could

26  receive based on its claim under Hawaii's antitrust law *against Defendants* would be inadequate.

27  Accordingly, the Court finds that Plaintiff has not sufficiently pled an unjust enrichment claim

28  under Hawaii law as an alternative to its legal claims.  The Court thus **DISMISSES** the claim with

United States District Court
Northern District of California

1    leave to amend.

2    **IV.    CONCLUSION**

3        The Court **GRANTS IN PART and DENIES IN PART** Defendants' motion to dismiss,

4    Dkt. No. 60.  The Court dismisses Plaintiff's claims as follows:

5        • By operation of the parties' stipulation, the Court DISMISSES with prejudice:

6            ○ Plaintiff's consumer protection claim under D.C. law from Count VIII of

7                the amended complaint;

8            ○ Plaintiff's consumer protection claims under California law seeking

9                damages from Counts VII and VIII of the amended complaint;

10           ○ Plaintiff's unjust enrichment claims under Colorado and Maryland law from

11               Count XI of the amended complaint; and,

12           ○ Plaintiff's theory that Merck and Glenmark's agreement was *per se*

13               unlawful from Counts V and VI of the amended complaint.

14       • The Court DISMISSES without prejudice Plaintiff's conspiracy to monopolize

15           claims based on an alleged conspiracy between Merck and Schering from Counts

16           III and IV of the amended complaint.

17       • The Court DISMISSES without prejudice Plaintiff's *Walker Process* fraud theory,

18           sham litigation theory, and Orange Book listing theory from Counts I, II, IX, and X

19           of the amended complaint.

20       • The Court DISMISSES without prejudice Plaintiff's monopolistic scheme claims,

21           Counts IX and X of the amended complaint.

22       • The Court DISMISSES with prejudice Plaintiff's unjust enrichment claims under

23           Georgia, Washington, and Virginia law from Count XI of the amended complaint.

24       • The Court DISMISSES without prejudice Plaintiff's unjust enrichment claim under

25           Hawaii law from Count XI of the amended complaint.

26       The Court will allow Plaintiff to amend its complaint as to any claims that the Court

27   dismissed with leave.  Plaintiff is not allowed to add new parties or claims.  Any amended

28   complaint must be filed within 28 days of this Order, or by April 15, 2025.

United States District Court
Northern District of California

The Court further SETS a case management conference on April 29, 2025, at 2:00 p.m. The hearing will be held by Public Zoom Webinar. All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg. All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities. The Court further DIRECTS the parties to submit a joint case management statement by April 22, 2025.

**IT IS SO ORDERED.**

Dated:    3/18/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

29