GIBSON, DUNN & CRUTCHER LLP
Samuel G. Liversidge, SBN 180578
    sliversidge@gibsondunn.com
Shaun A. Mathur, SBN 311029
    smathur@gibsondunn.com
Sarah M. Kushner, SBN 320077
    smkushner@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071
(213) 229-7000

GIBSON, DUNN & CRUTCHER LLP
S. Christopher Whittaker, SBN 283518
    cwhittaker@gibsondunn.com
Courtney L. Spears, SBN 329521
    cspears@gibsondunn.com
3161 Michelson Drive
Irvine, California 92612-4412
(949) 451-3800

*Attorneys for Defendants Merck & Co.,
Inc., Merck Sharp & Dohme LLC (f/k/a
Merck Sharp & Dohme Corporation), MSP
Singapore Company LLC, Schering-Plough
Corp., and Schering Corp.*

Daniel A. Sasse (State Bar No. 236234)
Tiffanie L. McDowell (State Bar No. 288946)
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, California 92614
Telephone:  949.263.8400
Facsimile:  949.263.8414
dsasse@crowell.com
tmcdowell@crowell.com

Kent A. Gardiner*
Mark M. Supko, *Pro Hac Vice*
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone: 202.624.2500
Facsimile: 202.628.5116
kgardiner@crowell.com
msupko@crowell.com
 * *Pro Hac Vice* forthcoming

*Attorneys for Plaintiff
Kaiser Foundation Health Plan, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| KAISER FOUNDATION HEALTH PLAN, INC.,<br><br>        Plaintiff,<br><br>      v.<br><br>MERCK & COMPANY, INC.; MERCK SHARP & DOHME CORPORATION; SCHERING-PLOUGH CORPORATION; SCHERING CORPORATION; MSP SINGAPORE COMPANY LLC; GLENMARK PHARMACEUTICALS LTD.; AND GLENMARK PHARMACEUTICALS INC., USA,<br><br>        Defendants. | CASE NO. 4:21-cv-05497-HSG<br><br><br>**JOINT STIPULATION GOVERNING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS; ORDER** |

## <u>JOINT STIPULATION GOVERNING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS</u>

The parties to the above-captioned case (the "Action" or this "Litigation"), through their counsel, have stipulated and agreed to give effect to this Joint Stipulation Governing the Discovery of Electronically Stored Information ("ESI") and Hard Copy Documents ("ESI Protocol" or "Protocol"), to facilitate discovery in this Litigation.

The Parties shall make good-faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol. If a Producing Party, notwithstanding its good-faith efforts, cannot comply with any material aspect of this ESI Protocol or if compliance with such material aspect would be unreasonable, such party shall inform the requesting party in writing a reasonable time before the date of production as to why compliance with the ESI Protocol is impossible or unreasonable. No Party may seek relief from the Court concerning compliance with the ESI Protocol unless it has conferred in good faith with the affected Parties. All productions are subject to the Protective Order entered by the Court in this Litigation.

**I.      SCOPE.**

**A.      General.** The procedures and protocols set forth in this Protocol shall govern the production of ESI and Hard Copy Documents in this Litigation, as a supplement to the Federal Rules of Civil Procedure, and any other applicable orders and rules, with reference to this Court's Guidelines for the Discovery of Electronically Stored Information (the "Guidelines"), unless the Parties agree in writing to change them or they are changed by the Court. This ESI Protocol is intended to aid the Parties by providing a more predictable, cost-effective, and efficient management structure for the maintenance and production of ESI and Hard Copy Documents. Nothing in this Protocol shall supersede the Parties' production obligations under the Federal Rules of Civil Procedure.

**B.      Cooperation.** The Parties are aware of the importance the Court places on cooperation in good faith throughout the matter as set forth in the Guidelines. The Parties shall meet and confer in good faith on any issue regarding complying with any provision of this ESI Protocol, as necessary, including any issues relating to custodians, data sources and search methodologies (e.g., search terms),

that arise under this Protocol or otherwise. In the event the Parties cannot reach an agreement on a disputed matter, the Parties may submit the matter to the Court.

  **C.** **Liaison.** The parties have identified and/or will identify liaisons to each other consistent with Section 2.05 of the Guidelines.

## II. DEFINITIONS.

  **A.** "Confidentiality Designation" means the legend affixed to Hard Copy Documents and/or ESI or provided in the "Confidentiality" metadata field as defined by, and subject to, the terms of the Parties' Protective Order in the Litigation.

  **B.** "Documents" shall have the same definition as set forth in Federal Rule of Civil Procedure 34(a). The term "Document" shall include Hard Copy Documents and ESI as defined herein.

  **C.** "Document Family" refers to a group of related documents that include parent and child documents (e.g., a parent email and subsequent emails, and any attachments thereto, including, but not limited to, Excel spreadsheets, word documents, and PDFs). Hyperlinks within a document are not considered attachments. For the avoidance of doubt, any ESI referenced in documents (or any other ESI) by a hyperlink or other digital pointer ("hyperlinked files") shall not be construed to be in the same parent-child relationship solely by virtue of the hyperlink reference. The Receiving Party may make reasonable requests for the production of particular referenced files on a document-by-document basis by Bates number. The Parties agree to meet and confer as to any such requests including as to their reasonableness and proportionality.

  **D.** "Electronically stored information" or "ESI," as used herein, means and refers to computer-generated information or data, stored in or on any storage media located on computers, file servers, disks, tape, USB drives, or other real or virtualized devices or media, as such information is defined in the Federal Rules of Civil Procedure, including Rule 34(a).

  **E.** "Extracted Text" means the text extracted from a Document, and includes all header, footer and document body information when reasonably available.

  **F.** "Hard Copy Document" means a document existing in tangible form, including but not limited to Documents collected from physical files and not from electronic sources.

**G.**    "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion. "Hashing" is used to guarantee the authenticity of an original data set and can be used as a digital equivalent of the Bates stamp used in Hard Copy Document productions.

**H.**    "Load/Unitization file" means an electronic file provided with a production set of document images that facilitates the loading of such information into a Requesting Party's document review platform, and the correlation of such data in the platform. It also contains information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends. A Load/Unitization file will also contain data relevant to the individual Documents, including extracted and user-created metadata.

**I.**    "Media" means an object or device, real or virtual, including, but not limited to, a disc, tape, computer or other device on which data is or was stored.

**J.**    "Metadata" means and refers to information or data about data, and includes, without limitation: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, custody, usage, and/or validity of the electronic file; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

**K.**    "Native," "Native Format," or "Native Data Format" means and refers to the format of ESI in the application in which it was originally created and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

**L.**    "OCR text" means text generated through Optical Character Recognition Process of image/bitmap picture representation of the documents.

4

**M.** "Parties" means or refers collectively to the named Plaintiff and Defendants in the above-captioned matter, as well as any later added plaintiffs and defendants. "Party" shall refer to a plaintiff or defendant, individually.

**N.** "Producing Party" means or refers to a Party in the above-captioned matter from which production of ESI or Hard Copy Documents are sought.

**O.** "Requesting Party" means or refers to a Party in the above-captioned matter seeking production of ESI or Hard Copy Documents.

**P.** "Searchable Text" means the native text extracted from an Electronic Document or any OCR text generated from a Hard-Copy Document or electronic image.

**Q.** "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format, or "TIFF," image is an example of a Static Image. "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper documents.

**R.** "*Zetia* MDL" refers to the prior multidistrict litigation captioned *In re: Zetia (Ezetimibe) Antitrust Litigation*, No. 2:18-md-02836-RBS-DEM (E.D. Va.).

**S.** "*Zetia* MDL Discovery" means all discovery materials, including Documents, ESI, and written discovery, exchanged between the parties in the *Zetia* MDL.

**T.** "*Zetia* MDL Privilege & ESI Protocol" means the Joint Stipulated Protocol Governing Privilege and the Discovery of Electronically Stored Information and Hard Copy Documents filed in the *Zetia* MDL on October 24, 2018 at ECF No. 172.

## III.   PRESERVATION.

**A.   General.** To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree to the following.

**B.   Deleted Files and Litigation Holds.** To help contain costs, the Parties shall not be obligated under this Protocol to produce or preserve ESI that was deleted or lost prior to the date upon which the duty to preserve ESI arose as a result of the routine, good-faith operation of an ESI system. Nothing in this provision limits or expands a Party's obligation to search for ESI known to be "deleted"

5

by a user that remains as a copy on an archive, backup, or as active data on some other central server or place within a Party's possession, custody, or control, provided such search is otherwise consistent with and does not exceed the Party's obligations under the Federal Rules of Civil Procedure.

      **C.**      **Types of ESI that Need Not Be Preserved or Searched.** Nothing in this Protocol limits a Party's obligation to preserve responsive ESI. However, the Parties agree that there is no need to preserve or collect ESI from the following sources:

      **1.**      Random access memory (RAM) or other ephemeral data that is difficult to preserve without disabling the operating system;

      **2.**      On-line access data such as temporary internet files, histories, caches, cookies, etc.;

      **3.**      Data in meta data fields that are frequently updated automatically, such as last opened dates;

      **4.**      Shadowed, residual, "slack," "fragmented," "unallocated," or other data only accessible by forensics;

      **5.**      Data stored on photocopiers, scanners, and fax machines;

      **6.**      Data in metadata fields that are frequently updated automatically, such as last-opened dates, except that metadata shall be produced in accordance with Section V.

      **7.**      Data remaining from systems no longer in use that is unintelligible on any system;

      **8.**      Data maintained or duplicated from or in any electronic system used for the purpose of system recovery or information restoration and/or retention, including, but not limited to, system recovery backup or other media, continuity of operations systems, and data or system mirrors or shadows. No Party is obligated to preserve or collect from system-recovery or information restoration tapes as outlined above;

      **9.**      Server logs, or network logs; and

      **10.**      Logs of calls made from cellular or land-line phones.

The Parties also agree that there is no need, at this time, to search ESI from the following sources (although it must be preserved if potentially responsive), but all Parties reserve the right to seek to have this ESI searched if it becomes necessary during the litigation:

    **1.**    Information posted solely to social media, such as Facebook, Twitter, Tumblr, and similar platforms, to the extent posted through company accounts;

    **2.**    Voicemail messages;

    **3.**    Text messages sent and received via company-issued telephones, such as SMS or Apple iMessages; and

    **4.**    Instant message or "chat" messages which reside solely in the messenger program's cache or other automatic backup.

The Parties acknowledge that any subsequent search for ESI within these sources may require any documents resulting from such searches to be produced after the agreed-upon date for the close of fact discovery. A Producing Party who may produce documents resulting from supplemental searches within these sources of documents will not be prejudiced or otherwise penalized for producing such documents after the fact discovery cutoff.

## IV.    SEARCH PROCEDURES FOR ELECTRONIC DOCUMENTS.

    **A.**    **Document Families.** The entire family of a responsive document must be produced absent privilege or other permissible objection and subject to the below provisions. But a Producing Party may slipsheet non-responsive attachments within a document family. Further, the parties may suppress and withhold "junk" files such as signature blocks and corporate logos that are family members of produced documents.

    **B.**    **Timeframe.** The preservation, collection and production obligations of the Parties as set forth in this ESI Protocol apply to Documents and ESI generated, received, or created on or after the relevant periods as defined in the Parties' discovery requests and responses, except as otherwise modified by the Parties after meeting and conferring in good faith, or upon further order of the Court for good cause shown.

    **C.**    **Custodians and Search Terms.** Promptly after written responses to discovery requests are due, the Party receiving such requests shall provide an initial list of (a) custodians within its

7

organization (past or present) likely to possess responsive ESI with respect to documents the Party does not object to producing (as well as the potential custodians' job titles and brief summary of their primary responsibilities); (b) a proposed list of keyword search terms and strings (including semantic synonyms, code words, acronyms, and abbreviations that may reference responsive ESI) , and (c) any other search methodologies (e.g., Technology Assisted Review ("TAR")) that a Party intends to use to cull potentially responsive or relevant ESI. To the extent the parties disagree as to additional custodians, search terms, or search strings, the Parties will then meet and confer about any disputed issues promptly and in good faith. If the Parties reach an impasse, they may submit the dispute to the Court in the form of a joint discovery letter. .

**D.     TAR/AI Disclosures**.  Parties that intend to use TAR or any other type of AI to cull potentially responsive or relevant ESI shall also, promptly after written responses to discovery requests are due, describe a protocol that will include: (1) the TAR/AI software or system to be used; (2) the universe of ESI to which TAR/AI is to be applied (e.g., custodians, non-custodial sources, date ranges, additional search methodologies used to define the dataset); (3) a description of the method for training the TAR/AI model/system and identifying responsive ESI; and (4) a description of the method for validating the results of the TAR/AI model/system. The Parties agree to meet and confer in good faith with regard to any disputes relating to such TAR/AI disclosures. If the Parties reach an impasse, they may submit the dispute to the Court in the form of a joint discovery letter no later than thirty (30) calendar days after the Party receiving the requests has provided the initial TAR/AI disclosure.

**E.     Supplemental Searches for ESI.** A Party may request additional searches, search strings, or the searching of additional custodial and non-custodial sources, but may do so no later than 75 calendar days before the close of fact discovery. If a Receiving Party believes that such searches are needed, it shall notify the Producing Party and the parties shall meet and confer. If they are unable to reach an agreement, either Party may seek guidance from the Court. The Parties acknowledge that any supplemental searches for ESI may require any documents resulting from such searches to be produced after the agreed-upon date for the close of fact discovery. A Producing Party who may produce documents resulting from supplemental searches for ESI will not be prejudiced or otherwise penalized for producing such documents after the fact discovery cutoff.

**F.    Non-Custodial Sources.** Promptly after written responses to discovery requests are due, the Party receiving such requests shall provide a list of non-custodial sources, such as databases, that will be searched to identify potentially responsive or relevant Documents or ESI to the extent not previously produced in the *Zetia* MDL.

**G.    System Files.** The Parties may exclude certain files and folders that are reasonably identified as system files and not likely to contain user-created files.

**H.    Deduplication.** To reduce the unnecessary costs of reviewing and producing exact duplicate documents, each Party may use reasonable, good-faith efforts to avoid the production of duplicate ESI. Global de-duplication is executed at the document family level. Stand-alone files will de-duplicate against other stand-alone files, but not against attachments contained in document families. Deduplication shall be done on exact duplicate documents based on MD5 or SHA-1 Hash Values at the document level. Exact duplicate shall mean bit-for-bit identicality of the document content. For emails with attachments, the Hash Value shall be generated based on the parent-child document grouping, and only email messages in which the parent document and all attachments are exactly the same will be considered duplicates. However, Metadata identifying all custodians in possession of each document that is removed as a duplicate must be produced by being added to the "ALLCUSTODIANS" field in the production Load/Unitization File. In addition, outlook.ost files are excluded from processing as duplicative of outlook.pst files.

**I.    Email Threading.** Each Party may also thread e-mails in such a way as to eliminate lesser inclusive chains, and produce only the most complete iteration or most inclusive version of an e-mail chain. This includes production of any lesser inclusive chain with an attachment that is unique to the attachment in the most complete iteration or most inclusive version of that email chain. If a Party elects to produce only the most inclusive email chain, the Parties shall meet and confer if a Receiving Party requests production of a lesser-inclusive email chain. No Party will unreasonably deny any such request made according to the following protocol:

    a.  The Requesting Party shall make any such request as soon as reasonably practicable after receiving a document production.

    b.  The Requesting Party shall provide a list of Bates numbers of the documents and

the reason that it is requesting lesser-inclusive email chains.

    c.  Within fourteen (14) days of receiving such a request, the producing Party will either (i) produce the requested lesser-inclusive email chains to the extent reasonably practicable, or (ii) respond in writing, setting forth its position on the production of the requested documents.

    d.  If the Parties are unable to agree as to the production of the requested lesser-inclusive email chains, either Party may submit the matter to the Court.

    e.  Wholesale or categorical requests by category or file type are presumptively not reasonable.

Lesser included emails are not required to be slipsheeted or included in any redaction log.

       **J.**    **Previously Collected and Produced Data.** The Parties agree there is no obligation to reproduce any prior productions produced prior to the entry of this Stipulation including all *Zetia* MDL Discovery that was produced to Kaiser. To the extent discovery materials from other litigation are reproduced in this Litigation, the Parties may limit the form of production requirements set forth herein to the form they were produced in the other litigation. The Receiving Party reserves the right to meet and confer regarding the practicability and expense of previously collected and produced data meeting the form of production requirements set forth herein. To the extent that metadata for and formats of discovery materials produced in other litigation is readily accessible, the Producing Party shall make reasonable efforts to obtain and produce such data, but the Producing Party is otherwise under no obligation to re-collect, re-process, and/or re-produce the native or original files found in previously collected and produced data or create any metadata that does not exist in and/or is not already associated with the previously collected and produced data. The Parties are under no obligation to reproduce the material they previously produced to one another while in the *Zetia* MDL, but will reasonably accommodate requests arising from technology-related issues (e.g., pertaining to accessibility) to the extent any arise.

**V.**    **PRODUCTION PROCEDURES FOR ELECTRONIC DOCUMENTS.**

    **A.**    **General Production Format.**

1.      **Non-Redacted ESI Not Produced in Native Form.** The Parties shall take reasonable steps to produce non-redacted ESI in a form no less "searchable" than it is maintained in the normal course of the Producing Party's business. ESI will generally be produced in single-page, black and white, 300 dpi Group IV TIFF image file format together with Concordance or DAT load file and OPT image load file. When Microsoft Word documents are converted to TIFFs, the version that will be converted is as it was last saved and with track changes turned on. This means the images and extracted text will reflect the track changes. The Parties shall take reasonable steps to produce Microsoft Office document types converted to TIFF to reflect comments, speaker notes, footers, headers and track changes. The Parties shall take reasonable steps to produce non-redacted ESI with searchable extracted text of the entire Document (at the document level in a .TXT file) and the Metadata fields listed in Exhibit A in a Concordance .DAT file, where applicable. The list of fields in Exhibit A does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original Metadata of the Document. The Parties acknowledge there can be differences between the Operating System (Windows) and Application date/time fields and also agree that the Producing Party has no obligation to try and reconcile the differences, if any.

The Parties shall take reasonable steps to preserve the relationship between related documents (e.g., email attachments), and to produce attachments contemporaneously and sequentially immediately after the parent email or document. Parties may request the production of Documents or ESI in Native form by Bates number in the event that a Document or ESI produced in TIFF form is illegible, which request shall not unreasonably be refused.

2.      **Production of Documents Originating as Paper (i.e., Hard Copy Documents).** All Hard Copy Documents will be produced as black-and-white or color (as applicable), single-page, 300 dpi Group IV TIFF image file format together with Concordance or Summation Load/Unitization Files (depending on the preference of the Requesting Party) with coded data contained in a separate file. The Producing Party shall also provide document level OCR text files to accompany the TIFF format production. The minimum fields for a scanned Hard Copy Document record will be BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, ALLCUSTODIANS, and

11

TEXT, indicating the beginning and ending Bates numbers, attachment ranges of all documents, the custodian information, and the OCR text. If a Hard Copy Document consists of more than one page, the Unitization of the Document and any attachments and/or affixed notes shall be maintained as it existed in the original Document, so that each page will not be split, but instead sequenced and saved together, as they existed in the original.

**3.     Production of Native Format ESI.** The following types of documents shall be produced in Native Format, including the formulae embedded in the spreadsheet and any Metadata contained in the file, except where such files are redacted on privilege grounds: (a) Non-redacted Microsoft Access or other databases, (b) Microsoft Excel or other spreadsheet files, (c) Microsoft Excel or other spreadsheet files, (d) Microsoft PowerPoint files, or (e) other similar file formats where an image file does not adequately represent the files as maintained in the ordinary course of business. Files produced in Native Format shall be named with a sequential Bates number followed by the Confidentiality Designation, if applicable, and the file name. A single page slipsheet or placeholder TIFF image with the original file name, the phrase "PRODUCED IN NATIVE FORMAT" (or similar language), and stamped with the assigned Bates number, and the corresponding Confidentiality Designation under the Protective Order shall be included for each native file produced. No Party may attach to any pleading or any correspondence addressed to the Court, any Special Master, or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy of any produced native format document without ensuring that either the corresponding placeholder slip sheet is attached to the document or the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the document. To the extent native files, including electronic spreadsheets or presentations, are redacted for privilege, production may be made in TIFF format in accordance with the section on redacted documents.

**4.     Appearance and Content.** No document may be intentionally manipulated to change how the source document would have appeared if printed out to a printer attached to a computer viewing the file without prior agreement of the Requesting Party. Therefore, subject to any appropriate redaction, the Parties shall take reasonable steps to ensure that each document's electronic image shall convey the same information and image as the original document. Responsive ESI that presents

12

imaging or formatting problems shall be promptly identified and the Parties shall meet and confer in an attempt to resolve the problems. If a copy is not legible and the Requesting Party requests a legible copy, the Producing Party shall provide a legible copy within 14 calendar days, or explain why a legible copy is not available.

**5.     Searchable Text.** The Parties shall take reasonable steps to produce Searchable Text for all ESI produced. For all non-redacted ESI, the searchable text will be extracted directly from the native file. Likewise, the Parties agree that they will produce Searchable Text for all Hard Copy Documents that have been converted to images. For any document where text has been redacted, Searchable Text will be provided for the non-redacted text.

**6.     Bates Numbering.** Each page of a produced image shall have a unique Bates number electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source Document. Each TIFF image or native file assigned a Bates number shall be assigned a Bates number that is unique and maintains a constant length across the entire document production. No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

**7.     No Color.** Documents and ESI in color need not be produced in color. A party may request by Bates number that a reasonable number of specifically-identified documents be produced in a color .PDF or .JPG format, which request shall not unreasonably be refused. If a party seeks more than a reasonable number of documents to be produced in color, the Parties will meet and confer in good faith on the request.

**8.     Foreign Language Documents.** To the extent that Documents or ESI are produced that contain languages other than English, in whole or in part, the Producing Party shall produce all foreign language documents and ESI in the original language.

**9.     Replacements.** All files that are replaced for any reason must be annotated with an "R" designation appended to the Bates prefix. A cross reference file will be provided identifying the document's original Bates and its replacement Bates number.

**B.     Production of Redacted Documents/Information.**

13

JOINT STIPULATION GOVERNING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION
AND HARD COPY DOCUMENTS / CASE NO. 4:21-CV-05497-HSG

**1.    Redactions.** To the extent that a responsive document contains privileged content (e.g., attorney-client privilege or attorney work product), or to comply with federal or state privacy requirements (e.g., HIPAA), the Producing Party may produce that document in a redacted form.  For the avoidance of doubt, no redactions based on relevancy or responsiveness are permitted under this Order.

Any redactions shall be clearly indicated on each page of the document from which information is redacted, bearing a designation that it has been redacted. The designation shall make clear the reason for the redaction (e.g., "Redacted Privileged"). Where a document contains content that is both privileged or private (i.e., HIPAA) and non-privileged, the Producing Party shall redact the privileged or private material and produce the remainder of the document as non-redacted. If the Receiving Party finds a document to be incomprehensible or unintelligible because of a redaction, the Parties will meet and confer to try in good faith to resolve the dispute. For redacted electronic files, and redacted Hard Copy Documents, the Parties agree to produce a Concordance or Summation Load/Unitization File (depending on the preference of the Requesting Party), with Metadata in the dat. file.

**2.    Native Excel** or other spreadsheet files that are redacted for privilege or to comply with federal or state privacy requirements (i.e., HIPAA) may be redacted by overwriting the data contained in a particular cell, row, column or tab with the word "Redacted" and shall make clear the reason for the redaction (e.g., "Redacted Privileged") provided that such redaction does not alter any other unredacted cell(s) in the document. The Party producing redacted Native Format ESI must endeavor to produce the redacted Native Format ESI with all Metadata fields identified in Table 1 hereto. If the usefulness of the redacted Native Format ESI is significantly impacted by the loss of certain Metadata fields identified in Exhibit A hereto, the Parties shall meet and confer in good faith regarding the production of such Metadata without the production of the unredacted Native Format ESI itself.

**3.    Native Excels** or other spreadsheet files, PowerPoint or other presentation files that are redacted may be produced as single-page, 300 dpi Group IV TIFF images with load files pursuant to Exhibit B.

14

**4.**    For the avoidance of doubt, redactions for other than privilege are not required to be logged.

**C.    Family Relationships.**

**1.**    Document families must be preserved by assigning sequential Bates numbers to all files within a parent-child group, and by providing accurate attachment ranges for those files in the metadata fields required.

**2.**    For document families, to the extent that a document within a document family is deemed, after review, to be wholly non-responsive, such document may be withheld in accordance with Section IV.A of this Order. However, in no event should a "parent" document of a document family be withheld, even if standing alone such document would be non-responsive. If the Receiving Party believes that any document within a document family has been wrongfully withheld, the parties will meet and confer to try and resolve the issue.

**3.**    Where a document that is part of a family is withheld for privilege or non-responsiveness, its relationship to the rest of that Document Family shall be indicated by Bates-numbered slipsheets for each page in the withheld document. In accordance with Section V(B) of this Order, if an attachment to an email is withheld as non-responsive, its file name shall not be redacted from documents referencing or attaching the attachment.

**4.**    If a member of a Document Family otherwise determined to be responsive cannot technically be processed (e.g., unsupported file format, file corruption, inaccessible password-protected document), such technical issues shall be denoted by producing a Bates-labeled slipsheet stating bearing "Technical Issue - File Cannot Be Processed." If possible, Metadata for such technically-impaired documents shall be produced. The Parties agree to meet and confer in good faith to resolve any disputes over documents deemed to have technical issues.

**D.    Confidentiality of Produced ESI.**

**1.**    Responsive ESI, whether produced as TIFF images or in Native Format, shall be produced pursuant to the terms of the Protective Order. Any objections to production shall otherwise be made pursuant to the Federal Rules of Civil Procedure, the Federal Rules of Evidence, this ESI Protocol and the Protective Order entered in this Litigation. If the Producing Party is producing ESI in

15

TIFF format subject to a claim that it is protected from disclosure under any protective agreement or confidentiality order, or any agreement entered into or Order issued in this matter, the words "CONFIDENTIAL", "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY", or "HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY" shall be stamped electronically on each page of such document.

2.     If the Producing Party is producing ESI in Native Format subject to a claim that it is protected from disclosure under any protective agreement or confidentiality order, or any agreement entered into or Order issued in this matter, then the designation shall be included in the filename as well as the TIFF placeholder or where not produced with a TIFF placeholder, the storage device (e.g., CD, USB, or hard drive) containing such native ESI data shall be labeled with the designation "CONFIDENTIAL", "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY", or "HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY."

3.     The Receiving Party shall not load, import, submit, or otherwise transfer documents or data produced by the Producing Party to a publicly accessible Large Language Model ("LLM") or Artificial Intelligence ("AI") platform. LLM or AI platforms may be utilized with industry standard data security provisions and the Party has ensured the documents or data will not be utilized to train public models or otherwise made accessible to other users of the LLM or AI platform.  Nothing in this paragraph changes obligations owed under the Stipulated Protective Order.

**E.     Production Specifications.** All productions will include these additional specifications:

1.     Delimited image load/unitization file for images (.opt, .lfp or .dii) shall be provided pursuant to Exhibit B;

2.     Delimited metadata load file (.DAT) containing a field with the full path and file name to the native files produced pursuant to Exhibit B, and shall include the metadata fields identified below (Exhibit A);

3.     Document level .txt files for all native documents containing extracted full text or OCR text (OCR only if extracted text is not available or if the document has been redacted);

16

JOINT STIPULATION GOVERNING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION
AND HARD COPY DOCUMENTS / CASE NO. 4:21-CV-05497-HSG

**4.** Bates number branding and confidentiality designation (if any) on the face of the image in a location that does not obliterate, conceal, or interfere with any information from the source document;

**5.** A TIFF placeholder embossed with the corresponding confidentiality designation and Bates number shall be produced for all ESI produced in Native Format;

**6.** Each Bates number will: (i) be unique across the entire document production; (ii) maintain a constant length across the entire production (i.e., ABC00000001- with no space between the prefix and the number, padded to the same number of characters); (iii) contain no special characters; and (iv) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.

**7.** PowerPoint slides/presentations that are produced in TIFF format will be produced with any notes or comments contained therein; and

**8.** Each of the Metadata and coding fields set forth in Exhibit A shall be produced for a Document. The Parties are not obligated to populate manually any of the fields in Exhibit A if such fields cannot be reasonably extracted from a Document, with the exception of Default Production Fields ("DPF') or "duplicate custodian" fields that are generated in the course of collection, review and production. If metadata fields are not produced because they do not exist or because they are not reasonably accessible, the Producing Party shall include the fields in the header row of the .DAT and leave the field blank for the corresponding document(s).

## VI. STRUCTURED DATA.

Structured data (i.e., data that has been organized in a database or other similar formatted data repository) should be produced in a mutually agreeable data exchange format. The Parties will meet and confer to determine the potentially relevant databases at issue, including the data fields included in such databases.

## VII. PRODUCTION MEDIA.

Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), via secure FTP site, or such other readily accessible computer or electronic

17

media as the Parties may hereafter agree upon (the "Production Media"). Each piece of Production Media shall include a unique identifying label and cover letter including the following information:

      **A.**     Name of the litigation and its case number;

      **B.**     Name of the Producing Party;

      **C.**     Date of the production (mm/dd/yyyy);

      **D.**     Production volume number;

      **E.**     Bates number range(s);

      **F.**     Confidentiality Designation; and

      **G.**     Notes regarding any irregularities in the production (e.g., whether it is replacement Production Media (see below)).

Any replacement Production Media or Documents shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced. Producing Parties may encrypt their Production Media and, if so, shall provide a key to decrypt the Production Media in a separate communication.

## VIII.  PRIVILEGE AND PRIVILEGE LOGS.

      **A.**     **Privileged Documents in the *Zetia* MDL.** The Parties agree that the privilege designations included in the *Zetia* MDL Discovery, made pursuant to the *Zetia* MDL Privilege & ESI Protocol, continue to apply in this Action.

      **B.**     **Burden to Justify Privilege.** Pursuant to the Federal Rules of Civil Procedure, all redactions and/or other withholdings from discovery on the basis of the attorney-client privilege, the work product doctrine, or other applicable privilege or protection (each encompassed by the term "privilege" as used hereafter), must be disclosed and logged, subject to the provisions and exclusions of this ESI Protocol. The Producing Party bears the burden of establishing that any document, communication, information, or other content that is withheld whole or in part on the basis of an asserted privilege is in fact privileged and/or otherwise properly withheld. None of the above or following shifts or changes this burden.

      **C.**     **Documents that Need Not Be Logged.** The parties agree that certain privileged communications or documents need not be included in a privilege log: (a) communications to or from

outside or inside legal counsel for Defendants that were created after January 16, 2018, the filing date of the first complaint in the *Zetia* MDL; (b) communications or attorney work product that is related to the claims in this Litigation and that were created after January 16, 2018, the filing date of the first complaint in the *Zetia* MDL, (c) communications regarding litigation holds or preservation, collection, or review in this Litigation or any other litigation, including the *Zetia* MDL, unless otherwise ordered by the Court, and (d) lesser included emails suppressed under Section IV.I, above.

      **D.**    The parties shall meet and confer on a schedule for the production of privilege logs pursuant to this Section to the extent that productions are made wherein additional privilege logs must be produced.

      **E.**    Privilege logs shall be produced in a sortable Excel (or comparable electronically searchable and sortable format) that provides for each log entry or category (as applicable and to the extent reasonably available) at least the following information:

        **1.**    unique document identification number or, if produced in redacted form, Bates number;

        **2.**    document type;

        **3.**    family relationship, if applicable (i.e., identification of parent emails and all attachments);

        **4.**    date (date sent for correspondence such as emails, memos, and letters; date created for other documents);

        **5.**    to;

        **6.**    from;

        **7.**    author

        **8.**    cc;

        **9.**    bcc;

        **10.**    all privilege(s) or protection(s) claimed;

        **11.**    a description of the document, its subject matter, and its contents sufficient to establish the privilege under Fed. R. Civ. P. 26(b)(5); and

**12.**     an indication of whether the document has been redacted and produced or wholly withheld.

All attorneys appearing in the privilege log must be identified on a separate document by full name, employer, and last or current job title. In the privilege log itself, all attorneys must be identified with an asterisk next to their name in each entry.

To alleviate the time and expense of manually creating each entry field identified in this Section, the Party producing the privilege log may populate any of the required fields by exporting such associated Metadata available for the document, if applicable to support the claim of privilege. For privileged email chains, the Party is required only to log the information in the required fields for the top (or most recent) privileged email in the chain. Where practical, and in an effort to try and minimize disputes, a Producing Party shall consider producing email threads in redacted form rather than wholesale withholding, but is not required to do so. The privilege description field for such documents shall sufficiently describe the privilege basis for the entire document in accordance with Rule 26(b)(5). For avoidance of doubt, a Party shall not be required to log each individual email within an email chain as separate entries on the log.

**F.**     If the Requesting Party requires further information, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks this information. Within thirty (30) calendar days of such a request, the Producing Party must either (i) provide the requested information or (ii) challenge the request. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the Parties may request a conference with the Court before any motions may be filed.

**IX.     PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL.**

**A.     No Waiver by Disclosure.** This order is entered pursuant to Rule 502(d) of the Federal Rules of Evidence. Subject to the provisions of this Order and Section X of the Protective Order, if a party or nonparty (the "Disclosing Party") makes a disclosure, whether inadvertent or otherwise, of information in connection with the pending litigation that the Disclosing Party thereafter claims to be privileged or subject to work product protection ("Protected Information"), that disclosure of that

20

JOINT STIPULATION GOVERNING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION
AND HARD COPY DOCUMENTS / CASE NO. 4:21-CV-05497-HSG

Protected Information will not constitute or be deemed a waiver or forfeiture – in this or any other federal or state proceeding – of any claim of privilege or work product protection that the Disclosing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter. The Parties hereby expressly intend to exempt the Disclosing Party from any obligation to satisfy the requirements of FRE 502(b), including any requirement to demonstrate that the disclosure was inadvertent or that the holder of the privilege or protection took reasonable steps to prevent disclosure.

**B.      Notification Regarding Clawbacks.** A Disclosing Party must promptly notify the party receiving the Protected Information ("the Receiving Party"), in writing, that it contends it has disclosed that Protected Information. Upon such notification, the Receiving Party must act in accordance with Fed. R. Civ. P. 26(b)(5)(B). This notification process shall in no way relieve a Receiving Party of its independent duty to notify a Disclosing Party of the production of Protected Information that the Receiving Party knows or reasonably should know was produced.

**C.      Contesting Claim of Privilege or Work Product Protection.** If the Receiving Party contests the claim of privilege or work product protection, the Parties shall meet and confer and, if necessary thereafter, either party can move the Court for an Order concerning the dispute. Such a motion must be filed under seal. Pending resolution of the Disclosure Motion, the Receiving Party shall abide by the terms of Fed. R. Civ. P. 26(b)(5)(B).

**D.      Agreement to Modify Time Periods.** The Parties may stipulate to extend the time periods set forth in paragraphs (B) and (C) above.

**E.      Burden of Proving Privilege or Work-Product Protection.** The Disclosing Party retains the burden – upon challenge pursuant to paragraph (C) above – of establishing the privileged or protected nature of the Protected Information.

**F.      Voluntary and Subject Matter Waiver.** This Order does not preclude a party from voluntarily waiving privilege or work product protection. The provisions of Federal Rule of Evidence 502(a) apply when the Disclosing Party uses or indicates that it may use information produced under this Order to support a claim or defense.

**G.     Review.** Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

**X.     COST SHIFTING.**

**A.**     Generally, the costs of production of ESI under this Protocol shall be borne by the Producing Party, and the Parties agree that nothing in this Protocol renders any costs or expenses of producing ESI "necessary" within the meaning of 28 U.S.C. § 1920. The Producing Party shall bear all costs of producing documents, if any, in TIFF format, and expressly waives any right to seek reimbursement or taxing of such costs pursuant to 28 U.S.C. § 1920 or any other state or federal cost-recovery provision.

**B.**     If a Producing Party reasonably believes in good faith that producing particular ESI poses an undue burden or cost or is otherwise disproportionate, such Party, at or before the time the production is due under the Federal Rules of Civil Procedure, shall describe the nature of the objection with reasonable particularity and indicate whether it is willing to offer an alternative to production. The Parties shall promptly meet and confer in an attempt to resolve the issues and, if no resolution is reached, seek appropriate relief from the Court. In such case, the Court may apportion the costs of electronic discovery in accordance with and only as allowed by the Federal Rules of Civil Procedure; provided, however, that such apportionment shall not include the costs of producing documents in TIFF format, as discussed above.

**D.**     Nothing in this Section or the remainder of this Protocol precludes the Requesting Party from opposing any applications for shifting of costs.

**E.**     By entering this Protocol, a Party does not waive any objections it has to requests for documents. Nor does a Party give up its right to review its documents for privilege. The existence of this Protocol cannot be used to compel a Party to produce documents without review.

**XI.     MISCELLANEOUS.**

**A.     Third Party Documents.** A Party that issues a subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that the Parties to this Action have requested that third parties produce documents in accordance with the specifications set forth herein. Within seven (7)

22

calendar days of receiving any Documents or ESI obtained pursuant to a non-Party subpoena, the Issuing Party shall produce such Documents or ESI to all other Parties, except where the Third Party Documents are to be used in a deposition that is fewer than seven (7) calendar days away, in which case the Issuing Party shall produce such Documents or ESI to all other Parties no later than three (3) calendar days prior to the deposition. Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third parties to object to a subpoena.

      **B.**    **Good Faith.** The Parties shall make their best efforts to comply with, and resolve any differences concerning compliance with, this Order. If a Producing Party cannot reasonably comply with any material aspect of this Order, such Party shall inform the requesting party in writing at or before the time of production as to why compliance with the Order was unreasonable or not possible. No Party may seek relief from the Court concerning compliance with the Order unless it has conferred with other affected Parties to this Action.

      **C.**    **No Effect on Discoverability or Admissibility.** This Protocol does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI. Nothing in this Protocol shall be construed to affect the admissibility of any document or data. All objections to the admissibility of any document or data, except as to the authenticity of the documents produced by a Party as to which that Party stipulates, are preserved and may be asserted at any time.

      **D.**    **No Effect on Arbitration of Claims.** By agreeing to the terms of this Protocol, the Parties do not waive any and all rights to proceed by way of individual arbitration instead.

## XII.   MODIFICATION

      This Protocol may be modified by a Stipulated Order of the parties or by the Court for good cause show.

      **IT IS SO STIPULATED**, through Counsel of Record.

23

JOINT STIPULATION GOVERNING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION
AND HARD COPY DOCUMENTS / CASE NO. 4:21-CV-05497-HSG

Dated: November 3, 2025

Respectfully submitted,

 /s/ Tiffanie McDowell
Daniel A. Sasse (State Bar No. 236234)
Tiffanie L. McDowell (State Bar No. 288946)
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, California 92614
Telephone: 949.263.8400
Facsimile: 949.263.8414
dsasse@crowell.com
tmcdowell@crowell.com

Kent A. Gardiner *
Mark M. Supko, *Pro Hac Vice*
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone: 202.624.2500
Facsimile: 202.628.5116
kgardiner@crowell.com
msupko@crowell.com
* *Pro Hac Vice* forthcoming

*Attorneys for Plaintiff Kaiser Foundation Health Plan, Inc.*

 /s/ Samuel G. Liversidge
Samuel G. Liversidge, SBN 180578
Shaun A. Mathur, SBN 311029
Sarah M. Kushner, SBN 320077
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
(213) 229-7000
sliversidge@gibsondunn.com
smkushner@gibsondunn.com

S. Christopher Whittaker, SBN 283518
Courtney L. Spears, SBN 329521
GIBSON DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California 92612-4412
(949) 451-3800
cwhittaker@gibsondunn.com
cspears@gibsondunn.com

*Attorneys for Defendants Merck & Company, Inc., Merck Sharp & Dohme LLC (f/k/a Merck Sharp & Dohme Corporation), Schering-Plough Corporation, and Schering Corporation, and MSP Singapore Company LLC*

## **SIGNATURE ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Samuel G. Liversidge, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: November 3, 2025

By: */s/ Samuel G. Liversidge*
Samuel G. Liversidge

## **PURSUANT TO STIPULATION, IT IS SO ORDERED.**

Dated:  11/5/2025

Honorable Haywood S. Gilliam, Jr.

United States District Judge

**EXHIBIT A**

**FIELDS and METADATA TO BE PRODUCED**

The load files accompanying scanned paper documents will include the following objective coding fields, to the extent applicable:

| Field | Field Description |
|---|---|
| BEGBATES (DPF) | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a document family |
| ENDATTACH (DPF) | Ending Bates number of a document family |
| PAGECOUNT (DPF) | Number of pages |
| TEXTLINK (DPF) | Link to text file for the document |

The following metadata fields shall be included in Load/Unitization Files accompanying ESI, to the extent available, and/or unredacted:

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| BEGBATES (DPF) | First Bates identifier of item | First Bates Identifier of item | First Bates Identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item | Last Bates identifier of item | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a document family | Starting Bates number of a document family | Starting Bates number of a document family |
| ENDATTACH (DPF) | Ending Bates number of a document family | Ending Bates number of a document family | Ending Bates number of a document family |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| PAGECOUNT (DPF) | Number of pages | Number of pages | Number of pages |
| ALLCUSTODIANS | All custodians / sources of a document from which the document originated even if de-duplicated prior to production, separated by semicolons | All custodians / sources of a document from which the document originated even if de-duplicated prior to production, separated by semicolons | All custodians / sources of a document from which the document originated even if de-duplicated prior to production, separated by semicolons |
| CONFIDENTIAL | Confidentiality designation | Confidentiality designation | Confidentiality designation |
| FROM | | Sender of message | Sender of calendar invite |
| TO | | Recipient(s) of message or calendar invite | Recipient(s) of calendar invite |
| CC | | Copied recipient(s) of message or calendar invite | |
| BCC | | Blind copied recipient(s) of message or calendar invite | |
| SUBJECT | | Subject of message | Subject of calendar invite |
| SENTDATE | | The sent date of the message in the format MM/DD/YYYY | Date calendar invite sent (if any) |
| SENTTIME | | The sent time of the message in the format HH:mm:ss | Time calendar invite sent (if any) |
| RECEIVEDDATE | | The received date of the message in the format MM/DD/YYYY | The received date of the message in the format MM/DD/YYYY |
| RECEIVEDTIME | | The received time of the message in the format HH:mm:ss | The received time of the message in the format HH:mm:ss |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| FILENAME | | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent |
| FILEEXTEN | File extension | File extension | File extension |
| FILESIZE | Size of the file in bytes | Size of the file in bytes | Size of the file in bytes |
| HASH | MD5 or SHA 1 hash of the document | MD5 or SHA 1 hash of the email | MD5 or SHA 1 hash of the calendar entry |
| ITEMTYPE | Identifies whether the file is an email, attachment, or stand-alone efile. | Identifies whether the file is an email, attachment, or stand-alone efile. | Identifies whether the file is an email, attachment, or stand-alone efile. |
| NATIVELINK (DPF) | Link to native file (if any) | Link to native file (if any) | Link to native file (if any) |
| TEXTLINK (DPF) | Link to text file for the document | Link to text file for the email | Link to text file for the calendar invite |
| TITLE | Title from a document's properties | | |
| AUTHOR | Document Author from metadata | | |
| DATECREATED | Date file was created | | |
| TIMECREATED | Time file was created | | |

For chat and text messages, in addition to the above metadata fields, the following metadata fields shall be included in Load/Unitization Files accompanying ESI, to the extent available, and/or unredacted:

| Field | Field Description for chat and text messages |
|---|---|
| MESSAGE_BEGINDATE | Date and time Message was sent (format: MM/DD/YYYY HH:MM SS) for first message in chat thread. |
| MESSAGE_ENDDATE | Date and time Message was sent (format: MM/DD/YYYY HH:MM SS) for Last message in chat thread. |
| MESSAGE_NAME | Name assigned to the Message Thread |
| MESSAGE_PARTICIPANTS | Name and numbers for the individuals in chat thread |
| MESSAGE_COUNT | Count of messages in Thread |
| MESSAGE_ATTACHCOUNT | Count of attachments files in the message |
| MESSAGE_ATTACHNAMES | Filenames for the Message Attachments |
| MESSAGE_FILEPATH | Original path to the individual source Message file. Includes path up to and including internal path of containers |
| MESSAGE_FILENAME | Name assigned to the Message |
| MESSAGE_FILEEXT | File extension of Message |
| MESSAGE_FILEHASH | MD5 hash value of Message |
| APPLICATION | The application that the message was created in (WhatsApp, AppMessage, IMessage, SMS, MMS, Etc.) |

Such metadata field values will be extracted from the native file and will be produced to the extent available at the time of collection and processing, except that they may be redacted if privileged or if the metadata field values contain information protected by law or Court Order. This list of fields does not create any obligation to create or manually code fields, except the duplicate custodian field, that do not exist as part of the original metadata of the document.

**EXHIBIT B**

**REQUESTED LOAD FILE FORMAT FOR ESI**

1.    **Delimited Text File.** A delimited text file (.DAT File) containing the fields listed in Exhibit A should be provided. The delimiters for the file should be Concordance defaults:

- Comma – ASCII character 20 (<JI)
- Quote – ASCII character 254 (p)
- Newline – ASCII character 174 (®)

2.    **Image Cross-Reference File (.opt).** The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows:

| | |
|---|---|
| ImageID: | The unique designation that Concordance and Opticon use to identify an image. This should be the BegBates Number of the Document. |
| VolumeLabel: | The name of the volume. |
| ImageFilePath: | The full path to the image file. |
| DocumentBreak: | If this field contains the letter "Y", then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document. |
| FolderBreak: | Leave empty. |
| BoxBreak: | Leave empty. |
| PageCount: | Number of pages in the Document. |

**Sample Data**

PROD0000000l, VOL001,E:\100\ PROD0000000l.TIF,Y,,2

PROD00000002, VOL001,E:\100\ MT00000002.TIF,,,,

PROD00000003, VOL00l,E:\100\ MT00000003.TIF,Y,,,4

PROD00000004, VOL001,E:\100\ MT00000004.TIF,,,,

PROD00000005, VOL001,E:\100\ MT00000005.TIF,,,,

PROD00000006, VOL001,E:\100\ MT00000006.TIF,,,,