UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAISER FOUNDATION HEALTH PLAN INC., <br><br> Plaintiff, <br><br> v. <br><br> MERCK & COMPANY INC., et al., <br><br> Defendants. | Case No. 21-cv-05497-HSG <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** <br><br> Re: Dkt. No. 82 |

Pending before the Court is Defendants' motion to dismiss Plaintiff's complaint.  *See* Dkt. No. 82 ("Mot."); Dkt. No. 86 ("Opp."); Dkt. No. 87 ("Reply").  The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted.  *See* Civil L.R. 7-1(b).  For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss.

## I.   BACKGROUND

Plaintiff Kaiser Foundation Health Plan, Inc. first brought this antitrust action against Defendants Merck & Co., Inc., Merck Sharp & Dohme Corp., and MSP Singapore Co. LLC (collectively "Merck"); Schering-Plough Corp. and Schering Corp. (collectively "Schering"); and Glenmark Pharmaceuticals Ltd. and Glenmark Pharmaceuticals Inc., USA (collectively "Glenmark") in San Francisco Superior Court in June 2021.  *See* Dkt. No. 1-1.  The case was removed to federal court, Dkt. No. 1, and eventually consolidated as part of the *In re Zetia* MDL (*In re Zetia (Ezetimibe) Antitrust Litig.*, No. CV 2:18-MD-2836, (E.D. Va.)).  *See* Dkt. No. 17. The case was remanded back to this Court in December 2023, after Plaintiff opted out of participation in the MDL trial.  Dkt. No. 18.

Plaintiff filed an amended complaint in March 2024.  Dkt. No. 59.  The Court granted in

United States District Court
Northern District of California

part and denied in part Defendants' first motion to dismiss. Dkt. No. 70 ("MTD Order"). Most relevant here, the Court held that (1) Plaintiff had not adequately alleged a conspiracy between Merck and Schering to state claims under the California Cartwright Act; (2) "Plaintiff's failure to name any specific individual responsible for intentionally withholding material information from the PTO, or who participated in such efforts [was] fatal to its PTO fraud theory"; and (3) Plaintiff had not adequately pleaded the absence of an adequate remedy at law for its Hawaii unjust enrichment claim. *Id.* at 18–19, 27.

In April 2025, Plaintiff filed the operative second amended complaint against Defendants Merck and Schering. Dkt. No. 71 ("SAC").[1] As relevant to Defendants' motion, the complaint makes the following allegations of anticompetitive conduct related to Merck's cholesterol-reduction drug, Zetia:

- Merck and Schering improperly obtained two patents, U.S. Patent No. 5,767,115 ("the '115 patent") and reissue U.S. Patent No. RE 37, 721 ("the RE '721 patent"), by failing to disclose prior art and an inventor to the United States Patent and Trademark Office ("PTO"). *Id.* ¶¶ 62–80.[2]

- Merck and Schering improperly listed RE '721 and other invalid patents in Zetia's Orange Book when seeking approval of Zetia. *Id.* ¶¶ 81–91.[3]

- Merck and Schering filed a baseless lawsuit in 2007 to enforce the invalid RE '721 patent against Glenmark after it sought to launch a generic drug to compete with Zetia. *Id.* ¶¶ 94–109.

- Merck (which acquired Schering in 2009, *id.* ¶ 15) and Glenmark entered into an illegal reverse payment agreement in 2010 in which Glenmark agreed not to launch a

---

[1] Defendant Glenmark was dismissed in February 2025. Dkt. No. 69.

[2] The '115 patent issued in 1998. SAC ¶ 63. Plaintiff does not allege when the RE '721 patent issued, but it must have been before it was reissued once more in June 2011. *Id.* ¶ 62 n.9.

[3] "When the FDA approves a manufacturer's [New Drug Application], it lists certain information about any patents identified by the manufacturer as covering the new drug in the" Orange Book, which is formally called "Approved Drug Products with Therapeutic Equivalence Evaluations." SAC ¶ 24.

generic version of Zetia for several years, while Merck agreed not to launch an authorized generic in competition with Glenmark.  *Id.* ¶¶ 108, 121–29.

Plaintiff asserts that this conduct impeded the sale of, and thus competition from, generic Zetia in the United States for several years, which enabled Defendants to sell Zetia to consumers at artificially inflated prices during that period.  *Id.* ¶ 162.  As a result, Plaintiff alleges it paid higher prices for Zetia than it would have otherwise.  *Id.* ¶ 164.

Plaintiff asserts claims for (1) monopolization, conspiracy to restrain trade, and a monopolistic scheme in violation of the Cartwright Act (Counts I, III, and VII) and the state antitrust laws of California, D.C., Hawaii, and Oregon (Counts II, IV, and VIII), *id.* ¶¶ 195–238, 259–76; (2) unfair and deceptive trade practices under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL") (Count V), and California, Colorado, and Virginia state laws (Count VI), SAC ¶¶ 239–58; and (3) unjust enrichment (Count IX), *id.* ¶¶ 277–90.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

United States District Court
Northern District of California

(quotation omitted).

## III.   DISCUSSION

Defendants argue that Plaintiff has not adequately pleaded (1) *Walker Process* fraud, and any related claims; (2) unjust enrichment claims under Hawaii, Oregon, or California law; and (3) a violation of California's UCL.  Mot. at 9–10.

### A.  *Walker Process* **Fraud (Counts I, II, VII, and VIII)**

Plaintiff brings state law monopolization and monopolistic scheme claims alleging that Defendants obtained the RE '721 patent through *Walker Process* fraud by failing to disclose prior art and misrepresenting the true inventors of the patent.  *See, e.g.*, SAC ¶¶ 198, 213, 262, 264, 273. Defendants then allegedly (1) engaged in sham litigation by asserting their invalid and unenforceable patent and (2) wrongfully listed patents in the Orange Book that they knew were "invalid, unenforceable, and/or did not cover Zetia and/or Vytorin."  *Id.*

Under the *Walker Process* fraud doctrine, "a plaintiff [may] bring an action under § 2 of the Sherman Act based on the alleged maintenance and enforcement of a fraudulently-obtained patent."  *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1306 (Fed. Cir. 2016) (citing *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,* 382 U.S. 172, 173–74 (1965)). *Walker Process* fraud requires "that the asserted patent was obtained through knowing and willful fraud," and the "plaintiff in the patent infringement suit also have been aware of the fraud when bringing suit."  *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068–69 (Fed. Cir. 1998).

"Allegations of inequitable conduct sound in fraud, and thus a party pleading inequitable conduct must plead the 'circumstances constituting' the inequitable conduct with particularity under Federal Rule of Civil Procedure 9(b)."  *AbCellera Biologics Inc. v. Bruker Cellular Analysis*, No. 20-CV-08624-JST, 2024 WL 37213, at *3 (N.D. Cal. Jan. 2, 2024) (quoting *Exergen Corp. v. Wal-Mart Stores*, 575 F.3d 1312, 1328 (Fed. Cir. 2009)).[4]  "[T]o plead the

---

[4] The Federal Circuit has left open the question of whether *Walker Process* fraud still requires "a higher, more specific showing of 'knowing and willful fraud'" after *Therasense, Inc. v. Becton, Dickinson & Co.,* 649 F.3d 1276 (Fed. Cir. 2011) (en banc).  *TransWeb*, 812 F.3d at 1307 ("After *Therasense,* the showing required for proving inequitable conduct and the showing required for

4

'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1328. "Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328–29.

The Court previously held that "Plaintiff's failure to name any specific individual responsible for intentionally withholding material information from the PTO, or who participated in such efforts is fatal to its PTO fraud theory." MTD Order at 19. Plaintiff's amended complaint includes additional allegations and now advances two theories to support its *Walker Process* fraud claim: (1) that Schering's in-house patent attorney and two of the co-inventors on the RE '721 patent intentionally misrepresented or omitted the prior art, SAC ¶¶ 70–73; and (2) that a Schering inventor on the '115 and RE '721 patents "fail[ed] to include a known co-inventor," *id.* ¶¶ 68, 74–80.

### a.  Misrepresentation of Prior Art

Defendants argue that Plaintiff does not allege (1) "any facts concerning any specific individual's knowledge during the prosecution of the RE '721 Patent"; (2) "that any specific individual knew about a material prior art . . . that was allegedly withheld"; (3) "that any such individual acted with specific intent to deceive the PTO"; and (4) "that disclosure of any such study would have been material to patentability." Mot. at 20.  The Court finds that, at a minimum, Plaintiff has not pleaded specific intent.

Plaintiff's theory is that "[y]ears before the filing of the patent application that led to the '115 patent . . . Schering scientists, including at least two of the inventors named on the '115

proving the fraud component of *Walker Process* liability may be nearly identical.").  But there is no doubt that a plaintiff must at a minimum satisfy the pleading standards for inequitable conduct to plead *Walker Process* fraud.

United States District Court
Northern District of California

patent family, identified SCH48461," a compound with "inherent metabolites and metabolite-like analogues [including] SCH58235"—i.e., ezetimibe, or Zetia.  SAC ¶¶ 61, 65.  Specifically, Plaintiff claims that Duane A. Burnett and John W. Clader were named inventors on the international published patent application WO 93/02048 ("WO '048"), which described SCH48461 and experiments involving the compound.  *Id.* ¶¶ 65, 70–71.  Both Burnett and Clader were also inventors on the '115 and RE '721 patents and were allegedly "aware during prosecution of the application that ultimately issued as the '115 patent, which was later reissued as the RE '721 patent, that metabolites within the scope of one or more claims of the '115 patent were necessarily produced when SCH 48461 was administered to hamsters, as described in WO '048."  *Id.* ¶ 72.  Schering apparently disclosed the existence of WO '048 in the patent application for the '115 patent, but Plaintiff claims that Burnett and Clader failed to disclose the specific information about the metabolization of SCH48461, and that Schering attorney Anita W. Magatti "mischaracterize[ed] the WO '048 as mere 'background.'"  SAC ¶¶ 67, 73.[5]

This does not adequately plead deceptive intent.  Plaintiff has arguably alleged that Burnett and Clader knew about potentially invalidating studies in WO '048 by virtue of being listed inventors on the WO '048 application, and that they failed to disclose those studies.  But nothing suggests that these two Schering scientists intended to deceive the PTO.  It's not even clear how or if Burnett and Clader were involved in the '115 or RE '721 patent application processes.  Plaintiff also does not allege that Burnett and Clader encouraged Magatti to make any kind of misrepresentation—or interacted with her in any way.  As Defendants correctly observe, "[a] mere

---

[5] Plaintiff also mentions a 1997 study called "In Vivo Metabolism-Based Discovery of a Potent Cholesterol Absorption Inhibitor, SCH58235, in the Rat and Rhesus Monkey through the Identification of the Active Metabolites of SCH48461."  SAC ¶ 72.  Plaintiff claims that this study "confirmed" that "Burnett and Clader were aware . . . that metabolites within the scope of one or more claims of the '115 patent were necessarily produced when SCH48461 was administered to hamsters."  *Id.*  First, it's not clear what factual basis Plaintiff has to say that Burnett and Clader knew about this study.  Plaintiff argues that "it is reasonable to infer that as employees of Schering working on the exact same subject matter as the authors of the 1997 JPET Article, Burnett and Clader knew about the subject matter of the article and the information contained therein."  Opp. at 11.  The Court is not convinced that it should impute the knowledge of any one Schering scientist to all other scientists just by virtue of common subject matter.  But second, it's not clear what additional knowledge Plaintiff alleges Burnett and Clader gained from the 1997 study that was not already known to them from the WO '048 patent.  And whether Burnett and Clader knew about the 1997 study, the WO '048 patent, or both, Plaintiff has not adequately alleged intent.

United States District Court
Northern District of California

United States District Court
Northern District of California

failure to cite a [prior art] reference to the PTO will not suffice" for *Walker Process* fraud absent "evidence of fraudulent intent," *Nobelpharma*, 141 F.3d at 1071, since an omission "could happen for any number of nonfraudulent reasons," *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1347 (Fed. Cir. 2007). In short, Plaintiff "fails to substantiate its suggestion that Burnett's and Clader's purported 'awareness' of relevant information . . . somehow metamorphosed into the specific intent to deceive the USPTO by withholding critical known information," and "[a]bsent this degree of specificity, mere awareness (assuming, *arguendo*, such awareness did exist) does not meet the pleading requirements." *Humana Inc. v. Merck & Co.*, No. 2:23-CV-23023 (BRM) (LDW), 2025 WL 2538859, at *12 (D.N.J. Sept. 4, 2025).

Plaintiff's pleadings are not saved by the reference to Magatti's alleged misrepresentation that the WO '048 patent provided "additional background on cholesterol biosynthesis inhibitors and β-lactam cholesterol absorption inhibitors." SAC ¶ 73. Unlike with an omission, "[a] false or clearly misleading prosecution statement may permit an inference that the statement was made with deceptive intent." *Dippin' Dots*, 476 F.3d at 1347. However, Plaintiff does not adequately plead that Magatti knew about the allegedly invalidating metabolization studies in WO '048 (or the 1997 study). Plaintiff does not allege that Burnett, Clader, or Magatti interacted at all. And even if Magatti knew of the invalidating studies, Plaintiff has not adequately alleged that Magatti made a "false or clearly misleading prosecution statement" to permit an inference of deceptive intent, since it is not obvious what was false or clearly misleading here. Plaintiff does not seriously respond to Defendants' argument on this point, instead asserting in a circular fashion that "[t]he misrepresentation was the failure to inform the PTO that WO '048 disclosed subject matter claimed in both the '115 and RE '721 patents." Opp. at 12 n.5. Beyond this, Plaintiff does not explain how Magatti's statement could create an inference of deceptive intent on its own under Federal Circuit or Ninth Circuit precedent.

In its opposition, Plaintiff cannot identify any allegations that permit an inference of deceptive intent, instead arguing that circumstantial evidence can show deceptive intent. Opp. at 12–13. The Court acknowledges that it "may infer intent from indirect and circumstantial evidence because direct evidence of deceptive intent is rare." *TransWeb*, 812 F.3d at 1304

(quotation omitted).  But beyond citing these general propositions, Plaintiff does not explain why the Court can infer deceptive intent from the facts alleged here.  Accordingly, the Court finds that Plaintiff has not stated a claim for *Walker Process* fraud related to alleged misrepresentations or omissions regarding WO '048 (or the 1997 study).  Because the Court has already given Plaintiff ample opportunity to amend its complaint to state this theory, the Court dismisses this portion of the claims without leave to amend.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), *as amended* (Feb. 10, 2009) ("[W]here the Plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad.") (quotation omitted).

#### b.  Misrepresentation of Inventorship

Plaintiff's second theory of fraud is that Dr. Stuart Rosenblum "intentionally misrepresented . . . the identity of the inventors of the claimed subject matter" by leaving off Schering scientist and alleged co-inventor, Dr. Adriano Afonso.  SAC ¶¶ 74–75.  Plaintiff alleges that Dr. Afonso was "at least a co-inventor" for the compound that was "most important" for developing ezetimibe, but Dr. Afonso asked Dr. Rosenblum to leave him off the list of the inventors for the '115 patent to help advance Dr. Rosenblum's career at Schering.  *Id.* ¶¶ 75, 77–79.  Defendants argue that Plaintiff "cannot plausibly allege that the purportedly omitted inventor—Dr. Adriano Afonso—was an inventor of anything claimed in the patent, that the patent would not have issued had Dr. Afonso been disclosed, or specific intent."  Mot. at 23.

First, Defendants argue that Plaintiff has not adequately alleged that Dr. Afonso should have been named as an inventor and urge the Court to adopt the decision in *Schering Corp. v. Mylan Pharmaceuticals, Inc.*, 2012 WL 1473329 (D.N.J. Apr. 27, 2012).  Mot. at 24–25.  In *Mylan*, Schering had sued Mylan Pharmaceuticals for infringing the reissue patent of RE '721 through its generic version of Zetia.  *Id.* at *1.  Mylan argued that the patent was invalid because of the same improper inventorship allegations involving Dr. Afonso.  *Id.* at *11.  The court held that Mylan had not shown that Dr. Afonso made a sufficient contribution to the invention of the relevant compound for the court to reasonably infer that Dr. Rosenblum believed Dr. Afonso was an inventor.  *Id.* at *14–*15.  But that ruling came at the conclusion of a bench trial and addressed

8

the lack of evidence to support Dr. Afonso's inventorship claims, not the initial pleading burden to sustain a *Walker Process* fraud claim.  At a subsequent stage of litigation, Defendants may be able to show that there is insufficient evidence corroborating Dr. Afonso's letter claiming inventorship. But that is not the issue presented on this motion.

Next, Defendants argue that Plaintiff "does not allege facts showing Dr. Afonso was not disclosed with a specific intent to deceive the PTO."  Mot. at 26.  Plaintiff alleges that Dr. Afonso and Dr. Rosenblum intentionally left off Dr. Afonso's name while preparing the patent application to help Dr. Rosenblum's career.  SAC ¶¶ 75, 79.  At the motion to dismiss stage, where the Court must accept these facts as true, this is enough for the Court to reasonably infer an intent to deceive the PTO.  This is not an omission case involving plausible nonfraudulent explanations, like "a good-faith belief that disclosure was not necessary" or where someone "forgot[] to make the required disclosure." *Dippin' Dots*, 476 F.3d at 1347.  The Court agrees that the potentially altruistic nature of the explanation does not "negate an intent to manipulate the evidence." *See Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1368 (Fed. Cir. 2007).[6]

Finally, Defendants argue that the *Walker Process* "test is whether, 'but for' the fraud, the invention would have been found unpatentable," and if Defendants "had disclosed the additional inventor[] and included [him] on the patent application, the patentability of the claims would have been the same." *Allflex USA, Inc. v. Avid Identification Sys., Inc.*, No. 5:06-CV-01109-MRP-OP, 2010 WL 11405130, at *11 (C.D. Cal. Feb. 16, 2010); Mot. at 25.  *Walker Process* fraud requires "a false representation or deliberate omission of a fact material to patentability . . . but for which . . . the patent would not have been granted." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1364 (Fed. Cir. 1998); *Dippin' Dots*, 476 F.3d at 1347 (same).  Plaintiff does not directly allege that the patents here would not have been issued but for this misrepresentation, instead stating that "the validity of the RE '721 patent (or its parent '115 patent) could not have been saved by

---

[6] On reply, Defendants argue for the first time that Plaintiff "has not alleged that [Rosenblum] had any involvement with or even awareness of the reissue proceedings or the issuance of the RE '721 Patent."  Reply at 15.  "The [Court] need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).  Defendants may raise this issue again in any motion for summary judgment.

correcting the inventorship on the patent." SAC ¶ 80. Plaintiff argues that "because improper inventorship cannot be corrected if the failure to identify the correct inventors was done with deceptive intent [under 35 U.S.C. § 256,] no valid patent could have been reissued with Dr. Afonso as a named inventor." Opp. at 17.

Neither the Ninth Circuit nor the Federal Circuit has squarely addressed whether incorrect inventorship claims of this kind can give rise to a *Walker Process* fraud claim. A handful of district courts have considered the issue, apparently coming to opposite conclusions. *Compare Allflex*, 2010 WL 11405130, at *11 (C.D. Cal. Feb. 16, 2010) (suggesting that "fraudulent non-joinder of inventors cannot support *Walker Process* fraud as a matter of law"), *with Medtronic Ave, Inc. v. Bos. Sci. Corp.*, No. CIV.A. 98-478-SLR, 2001 WL 652016, at *1 (D. Del. Mar. 30, 2001) (denying motion to dismiss *Walker Process* fraud theory where patent applicant allegedly "intentionally and fraudulently fail[ed] to identify one or more joint inventors").

This question is more difficult than the parties make it seem. This case is distinguishable from several of Defendants' cited cases, which dismissed a *Walker Process* fraud case where the plaintiff did not "allege that the joint inventorship . . . if indeed incorrect, would invalidate the patent under 35 U.S.C. § 102(f)." *Correct Craft IP Holdings, LLC v. Malibu Boats, LLC*, 2010 WL 598693, at *7 (M.D. Fla. Feb. 17, 2010); *see also Smith v. LifeVantage Corp.*, 429 F. Supp. 3d 1275, 1288 (D. Utah 2019) (denying claim premised on incorrect attribution where deceptive intent allegations were conclusory and thus it was unclear that inventorship couldn't be corrected under 35 U.S.C. § 256). Here, as the Court has observed, there are non-conclusory allegations of deceptive intent.

Plaintiff's cases are also distinguishable. Plaintiff cites *Ragner Technology Corp. v. Berardi*, 324 F. Supp. 3d 491 (D.N.J. 2018), which held that "[im]proper identification of inventorship and prior art" was sufficient to allege a "false representation[] . . . with regard to a material fact." *Id.* at 514. But the court then separately considered whether these material misrepresentations led to "the issuance of the patents" with little analysis, and that analysis is clouded by the court's reliance on the fact that the defendant had allegedly "failed to disclose . . . key prior art." *Id.* at 514–15. Plaintiff's other case says it reads *C.R. Bard* to permit *Walker*

10

*Process* claims premised on improper inventorship carried out with deceptive intent, but it does not explain how or why. *Guardant Health, Inc. v. Found. Med., Inc.*, No. CV 17-1616-LPS-CJB, 2020 WL 2461551, at *10 n.18 (D. Del. May 7, 2020), *report and recommendation adopted*, No. CV 17-1616-LPS-CJB, 2020 WL 5994155 (D. Del. Oct. 9, 2020). More generally, these cases and Plaintiff's theory sometimes seem to collapse the deceptive intent, materiality, and "but for" requirements of *Walker Process* fraud, and this approach may invite litigation on thin claims of improper inventorship.

While the Court is skeptical of Plaintiff's theory, it finds that the best path in the face of uncertain Federal Circuit precedent is to allow this claim to survive at the motion to dismiss stage. First, in *C.R. Bard*, the Federal Circuit observed that "since the inventorship issue [in the case] was not grounds of invalidity, it can not satisfy the 'but for' test of fraud." 157 F.3d at 1365. The Court reads this to imply that improper inventorship that *was* grounds for invalidity—as alleged here—might satisfy the *Walker Process* fraud "but for" test.[7] Second, at least pre-AIA, "[e]xaminers [were] required to reject applications under 35 U.S.C. § 102(f) on the basis of improper inventorship," and "[a]s a critical requirement for obtaining a patent, inventorship [is] material." *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1321 (Fed. Cir. 2000). Finally, the Court observes that the Federal Circuit has held that § 102(f), *as a condition for patentability*, "mandates that a patent accurately list the correct inventors of a claimed invention." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998). Read together, the Court understands this Federal Circuit precedent to imply that incorrect inventorship is a question of patentability and validity that can support a *Walker Process* fraud claim when there are sufficient allegations of deceptive intent.

Given this, the Court **DENIES** Defendants' motion to dismiss Plaintiff's *Walker Process* fraud claims. For now, and in light of 35 U.S.C. § 256, Plaintiff has adequately alleged that the PTO was deceived into "grant[ing] an invalid patent" with incorrect inventorship information.

---

[7] This is consistent with the Federal Circuit's formulation that a misrepresentation or omission under *Walker Process* "must evidence a clear intent to deceive the examiner and thereby cause the PTO to grant an invalid patent." *Nobelpharma*, 141 F.3d at 1070.

<div style="writing-mode: vertical">United States District Court<br>Northern District of California</div>

*Nobelpharma*, 141 F.3d at 1070.[8]  The Court will be able to more fully assess the legal viability of this claim in light of the record evidence if and when Defendants choose to challenge this theory again on a motion for summary judgment.

### c.  Sham Litigation, Orange Book Theory, Monopolistic Scheme

Defendants argue that Plaintiff's sham litigation, Orange Book, and monopolistic scheme theories rely on its *Walker Process* fraud theory.  Mot. at 26–27.  Defendants do not identify any other basis for dismissing Plaintiff's Orange Book or monopolistic scheme theories.  Given the Court's ruling on the *Walker Process* fraud theory, Defendants' motion to dismiss these claims is **DENIED**.

Defendants also argue that the sham litigation theory fails to the extent it relies on a second lawsuit that Merck brought against Mylan Pharmaceuticals, Inc. in 2010 because Merck won that case at trial.  *Id.*  "Past litigation success bars a sham litigation claim."  *Sandisk Corp. v. STMicroelectronics, Inc.*, No. C 04-4379JF(RS), 2008 WL 4615605, at *10 (N.D. Cal. Oct. 17, 2008).  Plaintiff admits that Mylan lost on its defense of misrepresenting inventorship during prosecution of a different patent, SAC ¶ 143, and does not respond to Defendants' argument.  Accordingly, the Court **GRANTS** Defendants' motion to dismiss the sham litigation claims to the limited extent that Plaintiff is asserting that the litigation against Mylan was baseless.  The Court **DENIES** Defendants' motion to dismiss the sham litigation claims otherwise.

### B.  Cartwright Act Claims (Counts I and VII)

Defendants also argue that Plaintiff has not adequately pleaded its Cartwright Act claims.  Mot. at 15–17.  Unlike the Sherman Act, the Cartwright Act "applies only to a combination involving two or more persons."  *Rosenman v. Facebook Inc.*, No. 21-CV-02108-LHK, 2021 WL 3829549, at *4 (N.D. Cal. Aug. 27, 2021) (quoting *Flagship Theatres of Palm Desert, LLC v.*

---

[8] The Court acknowledges Defendants' point that the PTO may have eventually granted the '115 patent in Plaintiff's "but for" world after requesting that the patentees update the inventorship information.  But the theory here is that the PTO was deceived into granting a patent *with that improper inventorship information*, which was invalid.  Such defects may usually be salvageable, 35 U.S.C. § 256, but that would not be the case under Plaintiff's allegations that Defendants acted with deceptive intent.  As a result, at least based on the complaint as framed, the PTO was allegedly deceived into granting (and then reissuing) an invalid patent.  This is another issue that will be ripe for close reexamination on summary judgment in light of the actual record.

United States District Court
Northern District of California

*Century Theatres, Inc.*, 198 Cal. App. 4th 1366, 1386 (2011)); Cal. Bus. & Prof. Code § 16720. California courts "demand a 'high degree of particularity in the pleading of Cartwright Act violations.'" *Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1299 (S.D. Cal. 2009) (quoting *G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256, 265 (1983)).  A Cartwright Act claim "must plead the formation and operation of the conspiracy and the illegal acts done in furtherance of the conspiracy." *Freeman v. San Diego Ass'n of Realtors*, 77 Cal. App. 4th 171, 196 (1999).  Further, "[i]t is not enough merely to include conclusory allegations that certain actions were the result of a conspiracy; the plaintiff must allege facts that make the conclusion plausible." *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1129 (9th Cir. 2015). Accordingly, "Cartwright Act claims are properly dismissed 'where the complaint makes conclusory allegations of a combination and does not allege with factual particularity that separate entities maintaining separate and independent interests combined for the purpose to restrain trade.'" *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 320 (N.D. Cal. 2007) (quoting *Freeman*, 77 Cal. App. 4th at 189).

The Court previously dismissed Plaintiff's Cartwright Act claims because "none of the facts alleged plausibly support[ed] the inference that Defendants 'worked together' to further Merck's monopoly with respect to Zetia" and noted that all of the conduct was "lawful as pled," which "cannot plausibly support an inference that Defendants were working together to pursue an unlawful scheme."  MTD Order at 17.

Plaintiff now alleges that "Merck and Schering-Plough intentionally withheld material prior art from the USPTO that would have barred issuance of the RE '721 patent, brought and maintained patent litigation that they later admitted was meritless, and then effectively paid Glenmark and [its partner] hundreds of millions of dollars to delay the launch of Glenmark's generic Zetia product."  SAC ¶¶ 198, 264.  Plaintiff argues that it has "cured" its conclusory allegations by alleging that "Merck, *with Schering-Plough's assistance . . .* [brought] and maintain[ed] unfounded patent litigation claims against Glenmark, and enter[ed] into a reverse payment agreement with Glenmark."  Opp. at 19–20 (quoting *id.* ¶ 198) (emphasis in Plaintiff's motion).  Plaintiff points to alleged coordination between Merck and Schering "to bring a sham

United States District Court
Northern District of California

litigation claim against Glenmark in an attempt to delay generic competition in the ezetimibe market." *Id.* at 20 (citing SAC ¶¶ 94–109).

Because Plaintiff has now successfully pleaded a *Walker Process* claim predicated on the allegedly incorrect inventorship information, Plaintiff has adequately stated a claim under the Cartwright Act at this stage. Plaintiff alleges that "Schering continued prosecution of related applications [to the '115 patent] into the 2000s on behalf of Merck and MSP Singapore," including the RE '721 patent. SAC ¶ 63. Schering's attorney, James Nelson, apparently knew about the incorrect inventorship information and continued with the RE '721 patent application without correcting it. *Id.* ¶¶ 68, 75, 79. Schering and MSP Singapore then sued Glenmark for infringement of this allegedly invalid patent. *Id.* ¶¶ 95, 198, 264. At the motion to dismiss stage, the Court finds that this adequately pleads an "illegal act[] done in furtherance of the conspiracy" between Merck and Schering. *Freeman*, 77 Cal. App. 4th at 196.

Defendants argue that a patent holder like Schering is "'legally incapable of entering into an antitrust conspiracy' with its exclusive licensee . . . 'involving the exploitation of the patent in which they both h[o]ld an interest.'" Mot. at 16–17 (quoting *Levi Case Co. v. ATS Prods., Inc.*, 788 F. Supp. 428, 432 (N.D. Cal. 1992)). *Levi* applied the Supreme Court's ruling in *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 770 (1984), which had determined that a corporation and its wholly-owned subsidiaries were legally incapable of conspiring under § 1 of the Sherman Act. 788 F. Supp. at 430. The district court held that the patent holder and its exclusive patent licensee "could not 'conspire' in violation of the antitrust laws" because they "were not independent sources of economic power" and "there was no opportunity for them to compete." *Levi*, 788 F. Supp. at 432. The Ninth Circuit has held that "the crucial question" in considering whether to apply the "single-entity" *Copperweld* rule "is whether the entities alleged to have conspired maintain an economic unity, and whether the entities were either actual or potential competitors." *Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1034 (9th Cir. 2005) (quotation omitted).

The Court declines to adopt the reasoning of *Levi* at this stage. The district court in *Levi* noted that the "relationship between [patent holder and licensee] can be a conspiracy in violation

14

of the antitrust laws only if it deprives the marketplace of independent actors," and the relationship between the relevant parties at the time of the case "[was] that of patent holder and sublicensee." 788 F. Supp. at 431. Here, Schering and Merck may have partially coordinated in their relationship as patent holder and licensee, but Plaintiff also alleges that they are independent corporations, SAC ¶¶ 11, 33, that separately joined together in a venture to develop Zetia and other cholesterol-lowering drugs, *id.* ¶¶ 55–57. Defendants have not adequately explained how, in light of these allegations, Plaintiff has not met its burden at this stage to plausibly allege that Merck and Schering "were . . . independent sources of economic power." *Levi*, 788 F. Supp. at 432. For these reasons, the Court **DENIES** Defendants' motion to dismiss Plaintiff's Cartwright Act claims.[9]

### C. Unjust Enrichment Claims (Count IX)

Defendants argue that Plaintiff's Hawaii, Oregon, and California unjust enrichment claims should be dismissed because Plaintiff has not alleged that it lacks an adequate remedy at law. Mot. at 27–30.[10] Plaintiff argues that it may plead its unjust enrichment claims in the alternative and that these claims "are not merely duplicative of [Plaintiff's] antitrust and consumer protection claims, but instead offer[] alternative forms of relief, including disgorgement of profits." Opp. at 22–23.

When a state's highest court has not decided a novel question of state law, a federal court's task "is to predict how the state high court would resolve it." *Hayes v. Cnty. of San Diego*, 658 F.3d 867, 871 (9th Cir. 2011) (quoting *Westlands Water Dist. v. Amoco Chem. Co.*, 953 F.2d 1109, 1111 (9th Cir. 1991)). The Court is not "free to reject" an on-point ruling by a lower state court "merely because it has not received the sanction of the state's highest court." *Id.* at 871–72 (quoting *Katz v. Children's Hosp.*, 28 F.3d 1520, 1528–29 (9th Cir. 1994)). Rather, "[a]n intermediate state appellate court decision is a 'datum for ascertaining state law which is not to be

---

[9] While this claim survives this motion to dismiss, on summary judgment the Court will consider whether these claims are legally viable in light of a more complete record as to the nature and extent of any joint actions.

[10] Defendants do not challenge Plaintiff's D.C. unjust enrichment claim. *See* SAC ¶ 285.

United States District Court
Northern District of California

disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Id.* at 872 (quoting *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982)).

### a. Hawaii

The Court previously dismissed Plaintiff's Hawaii unjust enrichment claim for failure to allege an inadequate remedy at law and observed that Plaintiff "may plead alternative theories, but 'even an alternative equitable claim must plead any necessary prerequisite to such a claim.'" MTD Order at 27 (quoting *Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003*, 406 F. Supp. 3d 884, 917 (D. Haw. 2019)).  Hawaii courts have made clear that "[t]he absence of an adequate remedy at law . . . is the 'necessary prerequisite' to maintaining equitable claims" like unjust enrichment.  *See Soule v. Hilton Worldwide, Inc.*, 1 F. Supp. 3d 1084, 1102 (D. Haw. 2014) (citing *Porter v. Hu*, 169 P.3d 994, 1007 (Haw. Ct. App. 2007)).  The Court also held that "Plaintiff fails to explain how the damages it could receive based on its claim under Hawaii's antitrust law against Defendants would be inadequate."  MTD Order at 27.

Plaintiff again states that it may plead arguments in the alternative, but that observation is no more convincing here.  Opp. at 22.  Plaintiff cites *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015), for the proposition that the alternative claims should not be dismissed at the pleading stage.  Opp. at 22.  *Astiana* held that the fact that an unjust enrichment claim was "duplicative of or superfluous to . . . other claims" was not grounds for dismissal.  *See* 783 F.3d at 762.  But it did not address what was required to plead the absence of an adequate remedy under state law.  Defendants are not arguing that Plaintiff's claim should be dismissed just because it pursues a "duplicative . . . or superfluous" theory, *id.*—they are arguing that Plaintiff has not properly alleged a state law requirement.[11]

However, Plaintiff's amended complaint now alleges that "[t]he unjust enrichment claim

---

[11] Plaintiff cites a handful of district court opinions that have allowed unjust enrichment claims to be pleaded in the alternative without analyzing whether a plaintiff had pleaded an inadequate remedy at law.  *See, e.g.*, *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, No. 13-CV-01180-BLF, 2015 WL 4755335, at *29 (N.D. Cal. Aug. 11, 2015); *In re Pork Antitrust Litig.*, 781 F. Supp. 3d 758, 884–85 (D. Minn. 2025).  The Court is not persuaded by these non-binding opinions given that state law requires the absence of an adequate remedy at law.

United States District Court
Northern District of California

under Hawaii law is necessary here because Hawaii's antitrust laws limit monetary damages for indirect purchasers to compensatory damages," and "[t]o fully address [Plaintiff's] harms in Hawaii, Defendants should be compelled to disgorge all unlawful or inequitable economic benefits they received above and beyond any compensatory damages." SAC ¶ 287. A plaintiff can plead that a remedy at law is inadequate when the two claims are "founded on the same wrongful conduct," but "the remedies sought are sufficiently distinct." *Porter*, 169 P.3d at 1008; *cf. Soule*, 1 F. Supp. 3d at 1103 (rejecting claim where plaintiff failed "to indicate how the damages she would receive under [another statute] are inadequate").

At the motion to dismiss stage, Plaintiff has sufficiently alleged that the compensatory remedies under its state antitrust claims are inadequate. Plaintiff's amended claim seeks disgorgement of "all unlawful or inequitable economic benefits [Defendants] received above and beyond any compensatory damages." SAC ¶ 287. This adequately alleges a distinct remedy. *Cf. N.K. Collins, LLC v. William Grant & Sons, Inc.*, 472 F. Supp. 3d 806, 831–32 (D. Haw. 2020) (permitting unjust enrichment claim to survive where it sought disgorgement of ill-gotten profits beyond those damages sustained by cancellation of publicity rights and invasion of privacy claims); *Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 130 Haw. 36, 49–50 (2013) (suggesting that disgorgement is an available remedy for an unjust enrichment claim).

Defendants argue that "there is no difference between the compensatory damages available to Kaiser under Hawaii's antitrust statute . . . or the restitution available to Kaiser under Hawaii's unjust enrichment law" because Plaintiff does not allege any "economic benefits above and beyond compensatory damages at Kaiser's expense." Mot. at 29 (emphasis omitted) (quotation omitted). It's true that some of the disgorgement would come from Plaintiff's alleged "overpayments for Zetia, Vytorin, and generic Zetia," SAC ¶ 286, and this relief would be indistinguishable from the compensatory relief that Plaintiff seeks elsewhere. But whether Defendants earned additional profits flowing from these overpayments is a factual question not amenable to resolution at the motion to dismiss stage.[12] Thus, the Court **DENIES** Defendants'

---

[12] However, Plaintiff would need to put forward some evidence of an additional benefit to Defendants stemming from Plaintiff's overpayments for this claim to survive a challenge at

United States District Court
Northern District of California

motion to dismiss the Hawaii unjust enrichment claim.

### b. Oregon and California

Defendants argue that Plaintiff's California and Oregon unjust enrichment claims should also be dismissed for failure to plead the absence of an adequate remedy at law. Mot. at 30. The parties acknowledge that Defendants did not raise this issue in their first motion to dismiss. *See id.* at 30 n.7; Opp. at 21–22 n.8. Federal Rule of Civil Procedure 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). A defendant who omits a defense under Rule 12(b)(6) does not waive that defense; instead, the defense may be raised subsequently "(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2). The Ninth Circuit has recognized that "[d]enying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. 273 (2019). In the interest of judicial economy, the Court will exercise its discretion here and consider Defendants' Oregon and California arguments in this order.

On the merits, then, the Court similarly finds that Plaintiff has adequately pleaded its unjust enrichment claims under Oregon and California law. Both states similarly require that a plaintiff plead the absence of an adequate remedy at law. *See Easterbrook v. LinkedIn Corp.*, No. 6:22-CV-01108-MC, 2023 WL 3022497, at *4 (D. Or. Apr. 20, 2023) (noting that equitable relief is unavailable if there is a "practical, efficient, and adequate" remedy at law (quotation omitted)); *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 260 (2011), *as modified* (Dec. 28, 2011) (applying "the general principle of equity that equitable relief . . . will not be given when the plaintiff's remedies at law are adequate"). Plaintiff's allegation that disgorgement of benefits above and beyond compensatory relief is necessary is specifically directed at the inadequacy of

---

summary judgment.

18

United States District Court
Northern District of California

Hawaii's antitrust laws, *see* SAC ¶ 287, but this allegation still pleads a remedy beyond that which is sought under the California and Oregon antitrust laws.  The Court finds this sufficient for now.  Defendants do not adequately raise any other, state-specific arguments for California and Oregon.  Thus, the Court **DENIES** Defendants' motion with respect to the California and Oregon unjust enrichment claims.

### D.  UCL Claim (Counts V and VI)

Defendants similarly argue that Plaintiff's "failure to allege that it lacks an adequate remedy at law is also fatal to its" UCL claims.  Mot. at 30.  Defendants rely on the Ninth Circuit's ruling in *Sonner v. Premier Nutrition Corp*, 971 F.3d 834 (9th Cir. 2020), which held that "federal courts must apply equitable principles derived from federal common law to claims for equitable restitution under" the UCL.  *Id.* at 837.  As discussed above, one established equitable principle is that equitable remedies will not be awarded when there is an "adequate remedy at law."  *Id.* at 842.  "[T]he fundamental thing that *Sonner*, by its own terms, requires at the pleadings stage is that the complaint 'allege that [the plaintiff] lacks an adequate legal remedy.'"  *Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-CV-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) (quoting *Sonner*, 971 F.3d at 844).  This Court has recently held that explicitly alleging the absence of an adequate remedy at law is sufficient at the pleading state.  *Lawyer v. Homary Int'l Ltd.*, No. 24-CV-04113-HSG, 2025 WL 1571856, at *7 (N.D. Cal. June 2, 2025); *see also Johnson*, 2022 WL 74163, at *3 ("[I]f a plaintiff pleads that she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more this early in the case.").  But plaintiffs can also satisfy this requirement by explaining "how their claims for damages and equitable relief are based on different theories."  *Bryan v. Apple Inc.*, No. 22-CV-00845-HSG, 2023 WL 2333893, at *3 (N.D. Cal. Mar. 2, 2023).

Here, Plaintiff does not explicitly allege that it lacks an adequate remedy at law for its UCL claim.  Instead, like with its unjust enrichment claims, Plaintiff argues that its UCL claim "seeks different relief from [Plaintiff's] legal claim."  Opp. at 26.  As before, Plaintiff's theory for compensatory damages is that "Merck's anticompetitive conduct caused Kaiser to overpay for Zetia and Vytorin," but its theory for restitution is that "Merck was unjustly enriched by ill-gotten

profits that should be disgorged." Opp. at 27; SAC ¶¶ 248, 251.  But this latter theory is plainly "nonrestitutionary disgorgement, which focuses on the defendant's unjust enrichment." *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 800 (2015) (quotation omitted).[13]  Nonrestitutionary disgorgement like this is "not available under the UCL." *Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1072 (N.D. Cal. 2020); *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003) ("Under the UCL, an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest."); *Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635, at *8 (N.D. Cal. Dec. 13, 2012) (finding ill-gotten gains constituted nonrestitutionary disgorgement).  Because this is Plaintiff's only argument for why it lacks an adequate remedy at law and it does not otherwise allege that it lacks an adequate remedy at law, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's UCL claims.

## IV.  CONCLUSION

Defendants' motion to dismiss, Dkt. No. 82, is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's UCL claims (Counts V and VI) are dismissed without leave to amend.  *See Zucco Partners*, 552 F.3d at 1007 ("[W]here the Plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad.") (quotation omitted).  Additionally, Plaintiff may not proceed on (1) a *Walker Process* fraud theory related to misrepresentation of prior art in the '115 and RE '721 patent applications, or (2) a sham litigation theory based on the 2010 Mylan litigation.  The remainder of the motion is **DENIED**.

   **IT IS SO ORDERED.**

Dated:    2/12/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[13] Plaintiff asserts without argument that this is restitutionary disgorgement. Opp. at 28.  Besides lacking any explanation, this argument is transparently undercut by the fact that Plaintiff explicitly refers to this as a form of unjust enrichment.  As this order should make clear, this kind of remedy is available under state law unjust enrichment claims, but not under the UCL.

United States District Court
Northern District of California