United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KAISER FOUNDATION HEALTH PLAN INC.,

Plaintiff,

v.

MERCK & COMPANY INC., et al.,

Defendants.

Case No. 21-cv-05497-HSG   (LJC)

**ORDER RESOLVING ORANGE BOOK LISTINGS DISCOVERY DISPUTE**

Re: Dkt. No. 109

Plaintiff Kaiser Foundation Health Plan, Inc. (Kaiser) and Defendants Merck & Company Inc., Merck Sharpe & Dohme Corporation, Shering-Plough Corporation, Shering Corporation, and MSP Singapore Company LLC (collectively, Merck) dispute whether Merck must produce documents concerning Merck's decision to list two patents in the Orange Book for two of Merck's drugs, Zetia and Vytorin.  ECF No. 109.  The Court assumes the parties' familiarity with the overall case and procedural history and the applicable legal standards.  Having considered the parties' arguments, the record in this case, and the relevant legal authority, the Court GRANTS Kaiser's request for production in part and orders the parties to further meet and confer to narrow the scope of production.

As part of the process for obtaining the FDA's approval of a new (or "pioneer") drug, a pharmaceutical company "must identify all patents (regardless of the patent owner) that it believes cover the drug in question."  *AIDS Healthcare Found., Inc. v. Gilead Scis., Inc.*, No. C 16-00443 WHA, 2016 WL 3648623, at *1 (N.D. Cal. July 6, 2016), *aff'd,* 890 F.3d 986 (Fed. Cir. 2018); *see* 21 U.S.C. § 355(b)(1)(A)(viii).  "The FDA publishes all patent listings" for pioneer drugs in the *Approved Drug Products With Therapeutic Equivalence*, commonly referred to as the "Orange Book."  *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1079 (D.C. Cir. 2001).  The

manufacturer must update its Orange Book listings if qualifying patents are issued after the FDA approves the pioneer drug. *See id.* at 1080. If a company wishes to make a generic version of a pioneer drug that has already been approved, the application for the generic drug must certify that for each patent which claims the pioneer drug, either that no patent has been filed, the patent has or will expire, or "that the patent is either invalid or the generic drug will not infringe it." *Id.* When an applicant for a generic drug files a certification that a patent "is either invalid or the generic drug will not infringe it," (called a Paragraph IV Certification) and the patent holder files an infringement suit within the specified timeframe, "the FDA may not approve the [generic application] for 30 months, or until the patent dispute has been resolved, whichever is sooner." *Id.* at 1079. The generic application that is first filed and approved by the FDA "gets a 180–day period of market exclusivity," although the pioneer manufacturer may market its own "authorized generic" version of the drug during that time. *Id.*; *Teva Pharm. Indus. Ltd. v. Crawford*, 410 F.3d 51, 55 (D.C. Cir. 2005).

Kaiser alleges that Merck filed a New Drug Application (NDA) for Zetia, a drug that inhibits absorption of cholesterol through the intestine, on December 27, 2001; the FDA approved Zetia on October 25, 2002; and Zetia promptly entered the market. ECF No. 71 (First Am. Compl.) (FAC) ¶¶ 55-56.[1] Kaiser alleges that Merck improperly listed several patents—at issue here, the RE '721 patent, the '106 patent, which issued in 2006, and the '966 patent—in the Orange Book for Zetia. *Id.* ¶¶ 83, 87-91. Kaiser claims that the '106 patent listing was improper because the '106 patent was invalid as it had been made obvious by the RE '721 patent. *Id.* ¶ 106.[2] Kaiser claims that the '966 patent listing was improper because the '966 patent claimed a product that combined ezetimibe (the active ingredient in Zetia) and a statin, even though Zetia did not contain a statin—in other words, that the '966 patent was overbroad. *Id.* ¶ 83. Kaiser alleges that Merck's improper listing of the '106 patent and '966 patent in the Orange Book for Zetia was

---

[1] Kaiser also alleges that, in 2004, Merck released Vytorin, a therapy that combined Zetia (which inhibits absorption of cholesterol), and Zocor (another of Merck's drugs, a statin, that limits the production of cholesterol). *Id.* ¶¶ 53, 61.

[2] For separate reasons, Kaiser claims that the RE '721 patent was invalid and unenforceable. *See id.* ¶¶ 63-80.

part of a broader anticompetitive scheme to box out the approval and manufacturing of generic ezetimibe. *See id.* ¶¶ 81-91.

Kaiser now seeks documents regarding Merck's decision to list the '966 patent and the '106 patent in the Orange Book for Zetia and/or Vytorin. *See* ECF No. 109. Merck argues that these documents are not relevant for two reasons. *Id.* at 3-5.

First, they argue that "Kaiser's Orange Book theory of monopolization has already been dismissed once by this Court" and would be dismissed again. *Id.* at 3. Since the parties filed their joint letter, Judge Gilliam has ruled on Merck's motion to dismiss. ECF No. 114. Although Judge Gilliam dismissed Kaiser's *Walker Process* fraud claims predicated on Merck's alleged withholding or misrepresentation of prior art when applying for the RE '721 patent, he did not dismiss Kaiser's claims predicated on Merck's alleged misrepresentation of inventorship or Kaiser's Orange Book and monopolistic scheme theories. *Id.* at 6, 11-12 ("Defendants do not identify any other basis for dismissing Plaintiff's Orange Book or monopolistic scheme theories. Given the Court's ruling on the *Walker Process* fraud theory, Defendants' motion to dismiss these claims is DENIED."). As Kaiser's Orange Book monopolization claims are still live, the undersigned disagrees with Merck's broad claim that documents regarding allegedly improper Orange Book listings are irrelevant. *See* Fed. R. Civ. P. 26(b).

Second, Merck argues that documents regarding listing the '966 patent and the '106 patent in the Orange Book are not relevant because Kaiser has not alleged that the listing of those "could *possibly* have caused any delay in the availability of generic ezetimibe." ECF No. 109 at 4-5. In general terms, Kaiser's theory of the case is that Merck improperly listed patents in the Orange Book for Zetia (including the '966 patent the '106 patent, and the RE '721 patent); a generic drug manufacturer, Glenmark, filed an application for a generic version of Zetia with a Paragraph IV certification asserting the "patents listed in the Orange Book for Zetia—including the RE '721 patent, the '966 combination-with-statins patent, and the '106 patent—were invalid, unenforceable, and/or not infringed[;]" Merck sued Glenmark for infringement of the RE '721 patent only; and Merck and Glenmark eventually entered into a "reverse payment" settlement agreement that delayed the entry of generic Zetia into the market. FAC ¶¶ 94, 105, 121-23.

United States District Court
Northern District of California

Merck argues that because Kaiser's theory of harm is based on the issuance, listing, and litigation regarding the RE '721 patent—not the '966 or '106 patents—discovery regarding the '966 or '106 patents has no bearing on this case. *See* ECF No. 109 at 4-5.

Kaiser urges that undersigned to take a wider view and construe their allegations regarding the listing of the '966 and '106 patents as "part of a larger monopolistic scheme." *Id.* at 2. They explain that "[e]ven if the false Orange Book listings are not independent antitrust violations, together with Merck's other misconduct they form part of the anticompetitive scheme at issue." *Id.* In support, Kaiser cites to *City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1376 (9th Cir. 1992), where the Ninth Circuit broadly proclaimed that it would not be "proper to focus on specific individual acts of an accused monopolist while refusing to consider their overall combined effect."

Given that Judge Gilliam declined to dismiss Kaiser's Orange Book and monopolistic scheme theories, the Court finds Kaiser's arguments more compelling. Kaiser alleges that, as part of a larger scheme of improperly listing and asserting patents to aggressively protect their intellectual property, Merck listed the '106 and '966 patents in the Orange Book even though Merck knew that these patents "were invalid, unenforceable, and/or did not cover Zetia." FAC ¶ 95. While the bulk of Kaiser's allegations center on the '721 patent and ensuing litigation and settlement with Glenmark, the alleged conduct regarding the '106 and '966 patents is relevant to Kaiser's claim that Merck was engaged in a widespread practice of engaging in anticompetitive conduct to protect Zetia. While Kaiser may not ultimately prevail on this theory (and making no determinations regarding the admissibility of evidence regarding Merck's decisions to list the '106 and '966 patents), the Court concludes that these topics are fair game for discovery. *See V5 Techs. v. Switch, Ltd.,* 334 F.R.D. 306, 310 (D. Nev. 2019), *aff'd sub nom. V5 Techs., LLC v. Switch, LTD.*, No. 17-cv-2349, 2020 WL 1042515 (D. Nev. Mar. 3, 2020) (explaining that for discovery purposes, the "definition of relevance" is "broad in scope"); Fed. R. Civ. P. 26(b)(1) ("Information … need not be admissible in evidence to be discoverable").

Merck argues that even if the Court determined there is "some highly marginal relevance to documents concerning" Merck's Orange Book listings of the two patents, the burden of

4

United States District Court
Northern District of California

collecting and reviewing these documents is "disproportional to the needs of the case." ECF No. 109 at 5. At the hearing, Merck explained that documents regarding the listings would be over two decades old and predominantly covered by attorney-client privilege.

The Court does not view the two requests for documents as necessarily overly burdensome. To ensure that the discovery is proportionate to the needs of the case, and not unduly burdensome, the following parameters for discovery are imposed.

First, although both requests seek documents "[i]rrespective of the Relevant Time Period," presumably the documents most pertinent to Merck's decisions to list the two patents will be from the periods immediately before and after the patents were listed. ECF No. 109-1. Request No. 21 is accordingly limited to documents from six months before and six months after the '966 patent was listed in the Orange Book for Zetia and Vytorin, and Request No. 22 is limited to documents from six months before and six months after the '106 patent was listed in the Orange Book for Zetia. The parties may stipulate to adjust this timeframe as needed, and any such proposed stipulation shall be filed on the docket.

Second, the parties shall meet and confer to discuss how these responsive documents are stored, Merck's ability to access the documents, and how they may be reasonably collected and produced. If utilizing document custodians is feasible given the manner in which these documents are stored, Merck may search custodial files for responsive documents rather than conduct a comprehensive search of all documents in its possession, custody, or control. If Merck opts to collect responsive records by searching custodial files, the parties shall meet and confer to identify the appropriate custodians. The Court anticipates that it will be appropriate for Merck to search the custodial files of two to three custodians, although this is without prejudice to the parties reaching a different number during their meet and confer efforts. Furthermore, the parties shall meet and confer regarding whether any search terms will be employed (and if so, what these terms will be). Finally, the parties shall confer regarding Merck's concerns regarding privileged documents.

Given the case schedule, the Court expects the parties to meet and confer in good faith to resolve these matters and complete production swiftly. The parties shall conduct their meet and

confer, either in person or via video conference, by April 10, 2026, and shall file a status report regarding the search for and production of documents by April 22, 2026.  If the undersigned determined that the parties have not adequately met and conferred to narrow the scope of production, the Court may require counsel for the parties to meet and confer further in person in her courtroom at a date certain.

**IT IS SO ORDERED.**

Dated: March 30, 2026

LISA J. CISNEROS
United States Magistrate Judge